**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Ellison GUILFORD, Appellant.**

Superior Court of Pennsylvania.

Submitted May 18, 2004.

Filed Nov. 1, 2004.

---

John Packel, Robin Forrest, Public Defenders, Philadelphia, for appellant.

Hugh J. Burns, Asst. Dist. Atty., Philadelphia, for Com., appellee.

BEFORE: MUSMANNO, KLEIN, JJ. and McEWEN, P.J.E.

OPINION BY MUSMANNO, J.:

¶ 1 Ellison Guilford ("Guilford") appeals from the judgment of sentence imposed after he was convicted of robbery and possession of an instrument of crime ("PIC").[1] We vacate the judgment of sentence and remand for re-sentencing.

¶ 2 Guilford was riding a bike at 2:45 a.m. on October 10, 2001, in Philadelphia. Two Philadelphia plainclothes police officers followed him based on information that they had received by radio. When a University of Pennsylvania police car arrived, the officers observed Guilford discard a silver object. The plainclothes officers pulled their car in front of Guilford, exited and identified themselves as police officers. Guilford ran away, and was caught by the police, who arrested him. A search of Guilford's person produced $7.70 in cash, a black nylon bag containing a key, and medical papers containing the name of Curtis Cesar ("Cesar"). Earlier that day, Guilford had pulled a gun on Cesar, and demanded money from him. Guilford took nine dollars and a bag from Cesar. When the police apprehended Guilford, Cesar identified him.

¶ 3 A jury found Guilford guilty of robbery and PIC. The trial court sentenced Guilford to life in prison on the robbery conviction, pursuant to the "three strikes" statute, 42 Pa.C.S.A. § 9714, and to a consecutive prison term of one and one-half to four years on the PIC conviction. Guilford filed post-sentence Motions, which were dismissed by operation of law. Guilford then filed this timely appeal, in which he raises the following issues:

1. Where Guilford's sole theory of defense was that the complainant fabricated the robbery allegation after a dispute over a drug deal, did the trial court violate Guilford's federal and state constitutional rights to confrontation, due process, compulsory process, and right to present a defense, by precluding cross-examination of the complainant or presentation of defense evidence regarding the complainant's drug use?

2. Did the trial court erroneously admit evidence of an unrelated robbery with which [Guilford] was charged, as such evidence was inadmissible hearsay, improper "other crimes" evidence, and far more prejudicial than probative?

3. Was the prosecutor's closing argument highly prejudicial and violative of due process in that the prosecutor disparaged defense counsel and [counsel's] trial strategy, vouched for the credibility of his witness, and commented on facts not in evidence?

4. Was the trial court's finding that two prior convictions were "strikes" based on insufficient and unreliable evidence and violative of 42 Pa.C.S.A. § 9714 and due process?

5. Is 42 Pa.C.S.A. § 9714(a)(2), which permits an increase of the statutory maximum penalty to life without parole upon a finding that "25 years of total confinement is insufficient to protect the public safety," violative of the United States and Pennsylvania Constitutions?

6. Is 42 Pa.C.S.A. § 9714(a)(2), which permits an increase of the statutory maximum penalty to life without parole

---

1.   18 Pa.C.S.A. §§ 3701, 907.

upon a finding that "25 years of total confinement is insufficient to protect the public safety," unconstitutionally vague and standardless, and violative of the due process provisions of the United States and Pennsylvania Constitutions? 7. Is 42 Pa.C.S.A. § 9714(a)(2), which requires an enhanced sentence of 25 to 50 years in prison upon proof of two predicate convictions, unconstitutional under the Pennsylvania and United States Constitutions because there is no right to a jury trial, and proof beyond a reasonable doubt and a formal specific charge in the information are not required?

*See* Brief of Appellant at 4.

¶ 4 Guilford first argues that the trial court erred or abused its discretion in precluding him from asking Cesar, at trial, whether Cesar was under the influence of drugs at the preliminary hearing on December 7, 2001. This date was two months after the alleged crime, which occurred on October 10, 2001. Guilford wanted to prove that the preliminary hearing did not proceed on December 7, 2001, because the presiding judge stated that Cesar was "rather high." Guilford asserts that the trial court's preclusion of cross-examination of Cesar on this subject undermined his defense that Cesar's testimony was fabricated, and violated Guilford's state and federal rights to confrontation and due process.

¶ 5 "A defendant's right of confrontation includes the right to cross-examine witnesses about possible motives to testify." *Commonwealth v. Dawson,* 486 Pa. 321, 405 A.2d 1230, 1231 (1979). However, "a witness may not be contradicted on 'collateral' matters, . . . and a collateral matter is one which has no relationship to the case at trial." *Commonwealth v. Bright,* 279 Pa.Super. 1, 420 A.2d 714, 716 (1980) (citations omitted); *accord Com-*

*monwealth v. Johnson,* 536 Pa. 153, 638 A.2d 940, 942–43 (1994). The scope and limits of cross-examination are within the discretion of the trial judge whose judgment will not be reversed in the absence of a clear abuse of that discretion, or an error of law. *Commonwealth v. Birch,* 532 Pa. 563, 616 A.2d 977, 978–79 (1992).

¶ 6 In the instant case, the Commonwealth moved, prior to trial, to exclude evidence that Cesar came to the preliminary hearing on December 7, 2001, under the influence of drugs or alcohol. On that date, Cesar was sworn as a witness, but the preliminary hearing judge continued the hearing based on the judge's perception that Cesar was under the influence of drugs or alcohol. *See* N.T., 12/7/01, at 10. The trial court granted the Commonwealth's Motion to exclude evidence that Cesar had appeared at the December 7, 2001 hearing under the influence of drugs or alcohol.

¶ 7 At trial, on cross-examination of Cesar, Guilford sought to elicit from him whether he had been "high" at the December 7, 2001 hearing. The trial court precluded this attempted cross-examination of Cesar on the grounds that the proffered cross-examination was not relevant to the robbery at issue. We conclude that the trial court did not abuse its discretion in this regard. Although a defendant is permitted to question the motive of a witness to testify, or to fabricate, and is permitted to examine a witness as to interest or bias, "questions about a witness's drug use at a time other than the time about which the witness is testifying are not permitted." *Commonwealth v. Koehler,* 558 Pa. 334, 737 A.2d 225, 239–40 (1999) (citations omitted); *accord Commonwealth v. Rizzuto,* 566 Pa. 40, 777 A.2d 1069, 1081 (2001).

¶ 8 Further, the mere fact that Cesar was under the influence of drugs or alcohol

on December 7, 2001 does not, without other evidence, tend to establish or demonstrate that Cesar had a motive to fabricate his testimony at trial. Guilford did not present any other evidence at trial to demonstrate the version of the events that he sets forth in his appellate brief. Accordingly, we find no abuse of discretion on the part of the trial court in precluding this testimony. *See Commonwealth v. French,* 396 Pa.Super. 436, 578 A.2d 1292, 1300 (1990) (holding that the trial court did not err in precluding cross-examination of police officer as to statements made during an internal police investigation because the purpose for which such testimony was sought was "pure speculation which has no support in the record").

¶ 9 Guilford also contends that the trial court erred in precluding him from calling as a witness the assistant public defender, who represented Guilford at the December 7, 2001 hearing, to testify that Cesar appeared to be under the influence of drugs on that date. However, as we have previously stated, such evidence is not permitted. *See Koehler,* 737 A.2d at 239–40 (citations omitted). Thus, the trial court did not abuse its discretion in precluding the proffered evidence.

■ ¶ 10 Guilford next asserts that the trial court erred in admitting evidence of another robbery with which he was charged. The evidence to which Guilford objects occurred during the testimony of two police officers. The first officer testified that, while he was speaking to Cesar after the robbery, he received a radio message that other officers "had a male that they were holding from a prior job." N.T., 8/6/02, at 96–97. The second police officer testified that, after apprehending Guilford, he patted him down for safety, and then two uniformed officers "came and met us with two complainants ... or victims ...." *Id.* at 130–32. Guilford contends that the above testimony constituted impermissible evidence of other crimes.

■ ¶ 11 The Commonwealth argues that Guilford did not preserve this issue for appeal because he failed to object in a timely manner to the above-cited testimony. In both of the cited instances, Guilford did not immediately object to the testimony cited above. Thus, we conclude that Guilford did not properly preserve his objections to this testimony. *See Commonwealth v. Montalvo,* 434 Pa.Super. 14, 641 A.2d 1176, 1184 (1994) (holding that, in order to preserve an issue for review, a party must make a timely and specific objection at trial); *Commonwealth v. Smith,* 487 Pa. 626, 410 A.2d 787 (1980) (holding that motion for mistrial was untimely where defendant waited two or three minutes after the objectionable testimony occurred to make objection).

■■ ¶ 12 However, even if Guilford had properly preserved his objections to the testimony, we would not grant Guilford relief.

Not all references which may indicate prior criminal activity require reversal. Mere passing references to criminal activity will not require reversal unless the record indicates that prejudice resulted from the reference.

*Commonwealth v. Blystone,* 555 Pa. 565, 725 A.2d 1197, 1204–05 (1999). "The nature of the reference and whether the remark was intentionally elicited by the Commonwealth are considerations relevant to the determination of whether a mistrial is required." *Commonwealth v. Richardson,* 496 Pa. 521, 437 A.2d 1162, 1165 (1981) (citation omitted).

¶ 13 In the instant case, it appears from the record that the above-cited testimony was not intentionally elicited by the Commonwealth. Further, both references to prior criminal activity were brief. Even

Guilford's attorney determined that it was best not to object to the references in order to avoid drawing attention to them. *See* N.T., 8/6/02, at 153. Accordingly, we conclude that the references were passing in nature.

¶ 14 Although Guilford alleges that the prosecutor exacerbated the effect of the passing references by comments made during closing argument, we cannot agree. The first prosecutorial comment to which Guilford refers, at N.T., 8/7/02, at 43–44, does not contain any reference to prior crimes by Guilford. The second comment to which Guilford refers, provides as follows:

> [The prosecutor]: This is the defendant's job. This is what he's about.... This is gunpoint robbery at Holly and Spring Garden. That's where he goes to work. And instead of taking the 40 or the [train] or whatever means that Mr. Cesar does to get to work, he uses his bicycle. And you know, ladies and gentlemen, the bag that was returned to the victim as it should have been because it contained personal items, papers and keys and what have you, that was proper. That was proper to return the items that belong to the individuals back to them. And so to make the record complete, ... I think we ought to return this to the person that it belongs to.[2]

N.T., 8/7/02, at 49–50. In this comment, it appears that the prosecutor was referring only to the robbery at issue in the instant case. Thus, we conclude that the prosecutor's comments did not exacerbate the effect of the two brief, passing references to prior criminal activity by Guilford.

¶ 15 Guilford next asserts that he is entitled to a new trial because the prosecutor's comments in closing argument were "highly prejudicial and violative of due process." Brief of Appellant at 20. He first contends that the prosecutor improperly disparaged defense counsel in closing argument, by stating that defense counsel "tried to pull the wool over your eyes," N.T., 8/7/02, at 40–41, and by indicating that he was tempted to say that "[e]verything [that defense counsel] just said is total BS ...." *Id.* at 45.

¶ 16 "[A] new trial is not mandated every time a prosecutor makes an intemperate or improper remark." *Commonwealth v. Ervin*, 766 A.2d 859, 864 (Pa.Super.2000) (citation omitted). "To constitute reversible error, the [prosecutor's] language must be such that its unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility towards the defendant, so that they could not weigh the evidence and render a true verdict." *Id.*

> Prosecutorial misconduct will not be found where comments were based on the evidence or proper inferences therefrom or were only oratorical flair. Moreover, allegedly improper comments by a prosecutor must be examined within the context of defense counsel's conduct.

*Commonwealth v. Hawkins*, 549 Pa. 352, 701 A.2d 492, 503 (1997) (citations omitted).

¶ 17 In the instant case, defense counsel, in her opening statement, indicated that she would prove a different version of the facts than those alleged by the prosecution. During the trial, however, defense counsel did not prove those facts. Thus, the prosecutor's comments were based on

---

**2.** The prosecutor then handed a toy gun to Guilford. *See* Trial Court Opinion, 8/22/03, at 10.

the lack of evidence, and were proper within the context of defense counsel's conduct.

■ ¶ 18 Guilford also objects to the prosecutor's statement in closing argument that Cesar "is a decent law-abiding citizen who is worthy of belief . . . ." N.T., 8/7/02, at 47, and to the following statements by the prosecutor:

> And let me tell you something about Mr. Cesar, if I may. First of all, [defense counsel], who attempted to assassinate his character in her opening statement and . . . her closing statement . . . has never walked a mile in his shoes. . . . So how dare she pass judgment on who he is or whether or not he is capable of telling the truth. . . .

*Id.* at 46–47.

> I venture to say, and I don't know the heart and mind of the Creator, but I venture to say that when he looks down upon Curtis Cesar, he likes what he sees. Somebody who just gets up and does what he can do. That goes to work and comes in here and tells the truth to the best of his ability, and that's why I'm standing here today because Curtis Cesar's just as important to me as anybody else is . . . .

*Id.* at 48–49.

¶ 19 We note first that Guilford did not object at trial to these remarks, and thus, his issue is waived for purposes of appeal. *See Commonwealth v. Sanchez,* 416 Pa.Super. 160, 610 A.2d 1020, 1030 (1992) (holding that "the failure to raise an issue, objection, or argument in a timely manner during trial forecloses further review of an alleged error in post-trial motions or at the appellate level"). However, even if not waived, the issue is without merit.

> [T]he comments of a prosecutor "must be read in their full context, including the defense closing. We may thus de-

termine if the comments were made in fair response to defense argument."

*Commonwealth v. Graham,* 522 Pa. 115, 560 A.2d 129, 133 n. 6 (1989) (citation omitted).

¶ 20 In the instant case, defense counsel, during closing argument, questioned the consistency of Cesar's testimony about his behavior on the evening of the crime. She asked the jury to question why the details of Cesar's story changed between the preliminary hearing and trial, and on two occasions, she stated that Cesar "was lying." *See* N.T., 8/7/02, at 23, 24–25.

¶ 21 In his closing statement, the prosecutor argued that Cesar's testimony was not incredible or unbelievable "as [defense counsel] would have you believe . . . ," and that Cesar's testimony was corroborated by other testimony. *Id.* at 37–40. Subsequently, the prosecutor made the statements to which Guilford now objects. *Id.* at 46–50.

¶ 22 Considering the context in which the prosecutor's statements were made, we conclude, as did the trial court, that those statements were "fair response" to defense counsel's argument. Thus, Guilford is not entitled to relief on this basis.

■ ¶ 23 Guilford contends that the prosecutor improperly commented on his bad character by stating:

> This is the defendant's job. This is what he's about. . . . This is a gunpoint robbery at Holly and Spring Garden. That's where he goes to work.

N.T., 8/7/02, at 49. Guilford asserts that these comments led the jury to surmise that the instant crime was one of many robberies that appellant had committed. Brief of Appellant at 23. We conclude that the prosecutor's remarks were a fair response to defense counsel's allegations in closing argument, and that the comments do not raise an inference that other rob-

beries were committed. Therefore, these comments were not reversible error in the context of this case.

¶ 24 Guilford also objects to the prosecutor's statement in closing that Guilford had used two different names on two occasions. Guilford argues that this statement was a violation of a pre-trial ruling.

¶ 25 Prior to trial, the prosecutor told the trial court that he intended to state in his opening argument that when Guilford was arrested, he gave a false name, *i.e.*, Edward Thomas. N.T., 8/5/02, at 3–4. The trial court ruled that the Commonwealth could not make such a statement because the Commonwealth did not know if Edward Thomas was in fact a false name. *Id.* at 25. Defense counsel then requested that the Commonwealth be precluded from presenting any evidence that Guilford told the police that his name was Edward Thomas. *Id.* at 25–26. The trial court denied counsel's request, stating that it would not bar the Commonwealth from asking the officers what name Guilford gave to them. *Id.* at 27–30.

¶ 26 At trial, Officer D. McGee testified that he and Officer Jason Wentzell apprehended Guilford on the date of the crime, after which Wentzell completed a police form, on which he indicated that Guilford's name was "Edward Thomas." N.T., 8/6/02, at 137. Since there was evidence admitted at trial that Guilford used a different name at the time of arrest, the prosecutor's closing remark that Guilford used the name Edward Thomas at the time of arrest was proper based on the evidence. Moreover, the prosecutor's remark did not violate the trial court's pretrial ruling.

¶ 27 Guilford next contends that the trial court's conclusion that Guilford had two prior convictions qualifying as "strikes" pursuant to 42 Pa.C.S.A. § 9714, was based on insufficient and unreliable evidence. Section 9714 provides in pertinent part as follows:

## § 9714. Sentences for second and subsequent offenses

### (a) Mandatory sentence.—

(1) Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. . . .

(2) Where the person had at the time of the commission of the current offense previously been convicted of two or more such crimes of violence arising from separate criminal transactions, the person shall be sentenced to a minimum sentence of at least 25 years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. Proof that the offender received notice of or otherwise knew or should have known of the penalties under this paragraph shall not be required. Upon conviction for a third or subsequent crime of violence the court may, if it determines that 25 years of total confinement is insufficient to protect the public safety, sentence the offender to life imprisonment without parole.

. . .

### (d) Proof at sentencing.—Provisions of this section shall not be an element of the crime and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be

determined at sentencing. The sentencing court, prior to imposing sentence on an offender under subsection (a), shall have a complete record of the previous convictions of the offender, copies of which shall be furnished to the offender. If the offender or the attorney for the Commonwealth contests the accuracy of the record, the court shall schedule a hearing and direct the offender and the attorney for the Commonwealth to submit evidence regarding the previous convictions of the offender. The court shall then determine, by a preponderance of the evidence, the previous convictions of the offender and, if this section is applicable, shall impose sentence in accordance with this section. . . .

. . .

(g) **Definition.**—As used in this section, the term "crime of violence" means murder of the third degree, voluntary manslaughter, aggravated assault as defined in 18 Pa.C.S. § 2701(a)(1) or (2) (relating to aggravated assault), rape, involuntary deviate sexual intercourse, aggravated indecent assault, incest, sexual assault, arson as defined in 18 Pa.C.S. § 3301(a) (relating to arson and related offenses), kidnapping, burglary of a structure adapted for overnight accommodation in which at the time of the offense any person is present, robbery as defined in 18 Pa.C.S. § 3701(a)(1)(i), (ii), or (iii) (relating to robbery), or robbery of a motor vehicle, or criminal attempt, criminal conspiracy or criminal solicitation to commit murder or any of the offenses listed above, or an equivalent crime under the laws of this Commonwealth in effect at the time of the commission of that offense or an equivalent crime in another jurisdiction.

42 Pa.C.S.A. § 9714.

¶ 28 Guilford contends that his prior conviction for attempted burglary, relied on by the sentencing court, was not a "crime of violence," as defined in section 9714(g). Pursuant to the statute, "burglary of a structure adapted for overnight accommodation in which at the time of the offense any person is present," is considered a crime of violence, as is an attempt to commit such a burglary. 42 Pa.C.S.A. § 9714(g).

¶ 29 Guilford contends that he was convicted of attempted burglary, as a second degree felony (F–2), and therefore, his conviction of attempted burglary does not qualify as a "strike" for purposes of section 9714(g). Burglary is defined in pertinent part as follows:

§ 3502. **Burglary**

(a) **Offense defined.**—A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter.

. . .

(c) **Grading.**—

(1) Except as provided in paragraph (2), burglary is a felony of the first degree.

(2) If the building, structure or portion entered is not adapted for overnight accommodation and if no individual is present at the time of entry, burglary is a felony of the second degree.

18 Pa.C.S.A. § 3502.

■ ¶ 30 "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S.A. § 1921. "Statutes which relate to the same class of [persons or] things are *in pari materia* and shall be construed together if possible." *Commonwealth v. Dodge*, 410 Pa.Su-

per. 189, 599 A.2d 668, 672 (1991) (citing 1 Pa.C.S.A. § 1932). In the instant case, although section 9714(g) does not refer to the burglary statute, section 9714(g) and section 3502(c) relate to the same class of persons, *i.e.*, persons convicted of burglary, and thus, we shall construe the statutes together.

■ ¶ 31 Construing the statutes together, it appears that the definition of a crime of violence based upon burglary in section 9714(g) corresponds to the definition of a first degree felony burglary as set forth in section 3502(c)(1) and (c)(2). As we previously indicated, "burglary of a structure adapted for overnight accommodation in which at the time of the offense any person is present," constitutes a crime of violence pursuant to section 9714(g). Similarly, pursuant to section 3502(c)(1) and (c)(2), if a building or structure entered is "adapted for overnight accommodation," and if an individual is "present at the time of entry," the crime of burglary will be graded as a first degree felony.

¶ 32 At the sentencing hearing in this case, the Commonwealth offered the Quarter Sessions file related to Guilford's guilty plea to attempted burglary as a second degree felony. *See* N.T., 12/23/02, at 43. The prosecutor also recited information from its own file in regard to that case. According to the Commonwealth's information, the attempted burglary to which Guilford pled guilty involved entry into a family's home, at a time when the family was present. Based on this information, the Commonwealth argued that Guilford was actually convicted of a crime of violence. The trial court accepted Guilford's guilty plea to this crime as a conviction of a crime of violence.

¶ 33 We conclude that the trial court erred in this regard. Section 9714(a)(2) requires, for its application, that a person

be "previously *convicted* of two or more ... crimes of violence ...." 42 Pa.C.S.A. § 9714(a)(2) (emphasis added). As we indicated above, the section 9714(g) definition of burglary as a crime of violence corresponds to the definition of burglary as a first degree felony. In the instant case, Guilford pled guilty to attempted burglary as a felony of the second degree. Although the underlying facts of Guilford's guilty plea indicate that he attempted to commit a first degree felony burglary, we cannot ignore the plain language of section 9714(a)(2), which requires a *conviction* of a crime of violence.

¶ 34 "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b). Here, the words of section 9714(a)(2) are clear in requiring a conviction of a crime of violence. While it appears obvious that persons were inside the structure that Guilford attempted to burglarize, Guilford was not convicted of a first degree felony burglary. Rather, through a plea agreement, Guilford pled guilty to the second degree felony of attempted burglary, which is not a crime of violence pursuant to section 9714(g). Thus, we conclude that the trial court erred in determining that section 9714(a)(2) was applicable. Accordingly, the trial court erred in sentencing Guilford pursuant to section (a)(2) of the "three strikes" statute.

¶ 35 Based on our holding in this regard, we must vacate Guilford's judgment of sentence and remand to the trial court for imposition of a proper sentence. In addition, we need not consider at this time Guilford's argument that section 9714(a)(2) is unconstitutional because we hold that Guilford was improperly sentenced pursu-

ant to that statute.[3] However, we will address Guilford's contention that the trial court erred in concluding that his prior robbery conviction constituted a crime of violence, as Guilford's contention in this regard may be relevant on remand.

¶ 36 Guilford asserts that the sentencing court improperly concluded that his prior robbery conviction constituted a crime of violence for purposes of section 9714 because the prosecutor failed to prove that the prior robbery conviction fell within one of the subsections of robbery identified in section 9714(g), *i.e.*, 18 Pa.C.S.A. § 3701(a)(1)(i), (ii), or (iii).

¶ 37 Robbery is defined in pertinent part as follows:

### § 3701. Robbery

**(a) Offense defined.—**

(1) A person is guilty of robbery if, in the course of committing a theft, he:

(i) inflicts serious bodily injury upon another;

(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;

(iii) commits or threatens immediately to commit any felony of the first or second degree . . . .

18 Pa.C.S.A. 3701(a).

▮ ¶ 38 At the sentencing hearing, the prosecutor proffered case No. 9103–1555 as a prior conviction of a crime of violence. *See* N.T., 12/23/02, at 33. The prosecutor indicated that Guilford had pled guilty to robbery as a felony of the first degree, based on a 1991 incident in which Guilford robbed a woman who was operating a cleaning business. *Id.* at 34. The prosecutor offered the Quarter Sessions file into evidence, and indicated that the bill of information stated that "in the course of committing a theft [defendant] feloniously did threaten another with or intentionally put [her] in fear of immediate serious bodily injury . . . ." The bill also named the victim, and stated that $115 was taken. *Id.* at 34–35. In addition, the prosecutor offered the preliminary hearing notes, wherein the victim indicated that Guilford walked into her store, with his hand in his pocket, which he pointed at her. *Id.* at 35. The victim indicated that "it looked like a gun and I was afraid and I ran away." *Id.* The prosecutor argued that the above evidence indicated that Guilford pled guilty to a first degree felony robbery. *Id.* at 36.

¶ 39 Further, the prosecutor stated that although the bill of information did not set forth the grading of the alleged robbery, there was a checkmark "next to [section] 3701," and a check mark next to the part of bill pertaining to robbery as a felony of the first degree. *Id.* at 36–37. The sentencing court asked to see the Quarter Sessions file, after which the court agreed with the prosecutor's statements concerning the bill of information. *Id.* at 38.

¶ 40 Guilford cites *Commonwealth v. Gunn*, 803 A.2d 751 (Pa.Super.2002) in support of his contention that the evidence was insufficient to support the sentencing court's conclusion that his prior robbery offense was a crime of violence. However, that case is distinguishable. In *Gunn*, the defendant was sentenced pursuant to section 9714. One of the "strikes" consisted of a previous conviction of conspiracy. In that prior case, the defendant was charged with aggravated assault, 18 Pa.C.S.A. § 2702(a)(4), and conspiracy to commit ag-

---

**3.** We note that in light of the decision of the United States Supreme Court in *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the provision of section 9714(a)(2) of the "three strikes" law, allowing imposition of a life sentence without parole where the sentencing court determines that "25 years of total confinement is insufficient to protect the public safety," is called into serious question.

gravated assault under section 2702(a)(4). Later, a charge of aggravated assault under section 2702(a)(1) was added. At the guilty plea hearing, the Commonwealth withdrew both counts of aggravated assault and the defendant pled guilty only to conspiracy.

¶ 41 Pursuant to section 9714(g), aggravated assault under section 2702(a)(1) or (a)(2) may be considered a crime of violence, as may conspiracy to commit such offense. *See* 42 Pa.C.S.A. § 9714(g). However, aggravated assault under section 2702(a)(4) is not a crime of violence under section 9714(g). This Court in *Gunn* concluded that the record did not reveal any evidence from which the sentencing court could determine which of the subsections of aggravated assault were involved in Gunn's guilty plea to conspiracy. *Gunn*, 803 A.2d at 753.

¶ 42 In the instant case, however, the record adequately established by a preponderance of the evidence that Guilford had pled guilty to robbery pursuant to section 3701(a)(1)(ii). In addition, Guilford conceded at the sentencing hearing that he had a prior first degree felony robbery in his record. *See* N.T., 12/23/02, at 11. Thus, the preponderance of the evidence established that Guilford's prior conviction of robbery constituted a crime of violence.

¶ 43 Because the Commonwealth proved that Guilford has only one prior conviction of a crime of violence pursuant to the "three strikes" statute, the trial court, on remand, shall re-sentence Guilford pursuant to 42 Pa.C.S.A. § 9714(a)(1) (setting forth mandatory minimum sentence for prior conviction of one crime of violence).

¶ 44 Judgment of sentence vacated; case remanded for re-sentencing in accordance with this Opinion.