J-S50001-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAVID WILLIAM ANTHONY | : | |
| | : | |
| Appellant | : | No. 578 WDA 2017 |

Appeal from the Judgment of Sentence March 15, 2017
In the Court of Common Pleas of Jefferson County Criminal Division at
No(s):  CP-33-CR-0000109-2017

BEFORE:  BOWES, J., OTT, J., and KUNSELMAN, J.

MEMORANDUM BY BOWES, J.:                    FILED DECEMBER 27, 2018

David William Anthony appeals the judgment of sentence of five to fifteen years imprisonment imposed following his convictions for drug-related offenses.  We affirm.

On July 11, 2016, Appellant was arrested and charged at CP-33-CR-415-2016 with delivery of a controlled substance and possession of a controlled substance based on an April 4, 2016 controlled purchase of heroin. On the date alleged, police met a confidential informant ("CI") at the police station, where Officer Tammy Murray of the Reynoldsville Borough Police Department searched the CI to make sure that she had no drugs or money on her person.  Trooper Michael Boltz of the Pennsylvania State Police then gave the CI one hundred and sixty dollars of state police funds to purchase ten stamp bags of heroin from Appellant.  Officer Murray, using her own vehicle,

drove the CI to Appellant's place of residence at 100 Brown Street in Reynoldsville, Pennsylvania, to purchase the heroin. Trooper Boltz followed in his personal vehicle, a black pick-up truck. The CI entered Appellant's residence briefly before returning to Officer Murray's vehicle. Back at the police station, the CI turned over ten bags of heroin which were stamped "12 monkeys" in purple ink. She was then searched again, and debriefed regarding the transaction.

Upon his arrest, Appellant was also charged at CP-33-CR-416-2016 with delivery of a controlled substance and possession of a controlled substance based on an April 6, 2016 controlled purchase of heroin. The April 6, 2016 transaction proceeded in the same manner as the April 4, 2016 transaction, with the exceptions that Trooper Boltz drove the CI and Officer Murray to and from Appellant's residence, and the CI turned over ten bags of heroin stamped with the letters "D-E-E-B-O."

The charges at 415-2016 and 416-2016 were consolidated and joined for trial. During pretrial proceeding, the Commonwealth obtained copies of text messages taken from a phone used by Appellant in April 2016.[1] The text

_____

[1] Appellant temporarily resided at 100 Brown Street, which was the home of Michelle Audette and her daughter, Marissa Neves. He stayed at their home during April 2016, when the subject transactions took place. Ms. Neves had loaned a cell phone to Appellant, which he ultimately left at the home when he ceased living there. Ms. Neves discovered text messages on the phone, exchanged between Appellant and the CI, that were disparaging to Ms. Neve's family. While the case was pending, she turned over to the Commonwealth

messages referenced three additional heroin transactions between Appellant and the CI in April 2016, which were unknown to police. The Commonwealth confronted the CI with the text messages, and she confirmed that the additional heroin transactions had taken place on April 13, 15, and 21, 2016, respectively.[2] The CI further confirmed the authenticity of the text messages, and indicated that they accurately reflected her communications with Appellant. Appellant was provided with copies of the text messages, and his counsel filed a motion in limine to preclude their admission into evidence. The motion was denied as to the texts referencing the drug transactions. Additionally, while Appellant was in jail awaiting trial, police recorded his telephone conversations. In one such conversation, Appellant told his son that he had twenty-seven bricks of heroin. See N.T. Trial 3/10/17, at 40; see also id. at 41 (wherein police witness explained that a "brick" means fifty stamp bags of heroin).

A few days before trial, the Commonwealth sought leave to file charges relating to the three additional heroin transactions reflected in the text

_____

screen shots of texts that Appellant had sent and received while he was using the phone. See N.T. Trial, 3/9/17, at 75-82.

[2] The April 13 and 15, 2016 transactions were made directly between Appellant and the CI. See N.T. Trial, 3/9/17, at 130-55. Regarding the April 21, 2016 transaction, Appellant texted the CI on April 22, 2016, and told her that he sold heroin to the CI's boyfriend on the prior day, and that the boyfriend intended to share the heroin with the CI. See id. at 150-53; 202-04.

messages in a separate criminal information, without a preliminary hearing. The Commonwealth also sought to join all of the informations for trial. Following a hearing, the trial court granted the Commonwealth leave to amend the information at 416-2016 to add the new charges. However, rather than amending that information, the additional charges were processed under a new case number, and Appellant was charged at CP-33-CR-109-2017 with three counts each of delivery of a controlled substance and possession of a controlled substance based on the April 13, 15, and 21, 2016 transactions.

A jury trial took place on March 9-10, 2017, on all three dockets. At the conclusion of trial, the jury acquitted Appellant of the original charges at 415-2016 and 416-2016, and found him guilty of all charges at 109-2017. On March 15, the trial court sentenced Appellant at 109-2017 to an aggregate term five to fifteen years incarceration.[3] Appellant filed a timely motion for reconsideration, which the trial court denied. Appellant thereafter filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

Appellant raises the following issues for our review:

    I.    Whether the trial court erred by allowing the Commonwealth to file new charges . . . and join them for trial two days prior to the jury trial, and denying the Appellant the right to a

---

[3] As Appellant was on probation at the time he committed these crimes, the trial court revoked his probation, and re-sentenced him at dockets CP-33-CR-387-2014 and CP-33-CR-611-2014. Appellant has challenged the sentences imposed at those dockets in a separate appeal.

- 4 -

preliminary hearing, filing of pretrial motions, and an opportunity to enter a negotiated plea.

II. Whether the trial court erred by not declaring a mistrial when the Commonwealth's witnesses and the district attorney made reference[s] to the Appellant's being incarcerated.

Appellant's brief at 3 (unnecessary capitalization omitted).

With respect to joinder of criminal informations for trial, our standard of review is well-settled: "[w]hether to join or sever offenses for trial is within the trial court's discretion and will not be reversed on appeal absent a manifest abuse thereof, or prejudice and clear injustice to the defendant." Commonwealth v. Wholaver, 989 A.2d 883, 898 (Pa. 2010).

Appellant contends that the trial court erred in permitting the additional charges to be filed at 109-217 and joined for trial, thereby depriving him of a preliminary hearing, formal arraignment, time to find witnesses, file pretrial motions, and either adequately prepare for trial or enter into a negotiated plea. Appellant additionally argues that the offenses alleged at 109-2017 did not arise out of the same criminal episode or the same criminal conduct as alleged at 415-2016 and 416-2016.[4]

_____

[4] Appellant also asserts that, although he was provided with copies of the text messages, the alleged time period of the deliveries to the CI was not in the same time period as indicated on the texts. However, as he has not developed this argument in any manner, we deem it waived. See Commonwealth v. Murchinson, 899 A.2d 1159, 1160 (Pa.Super 2006) (deeming appellant's claims waived under Pa.R.A.P. 2119(a) because he did not develop meaningful argument with specific references to relevant case law and to the record to support his claims).

Rule of Criminal Procedure 582(A)(1) addresses the joinder for trial of separate informations and provides in relevant part as follows:

> Offenses charged in separate indictments or informations may be tried together if:
>
> (a)    the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or
>
> (b)    the offenses charged are based on the same act or transaction.

Pa.R.Crim.P. 582(A)(1).  Further, Pa.R.Crim.P. 583 provides that "[t]he court may order separate trials of offenses . . . or provide other appropriate relief, if it appears that any party may be prejudiced by offenses . . . being tried together."  Pa.R.Crim.P. 583.

In this case, it is undisputed that the three criminal informations were based upon different transactions.[5]  Thus, they could only be joined for trial if the requirements of Rule 582(A)(1)(a) were satisfied.  Under subsection (A)(1)(a), when offenses are not based on the same act or transaction, courts apply the following test to determine whether severance is proper:

> whether the evidence of each of the offenses would be admissible in a separate trial for the other; whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, whether the defendant will be unduly prejudiced by the consolidation of offenses.

_____

[5] The trial court determined that all five transactions constituted a single criminal episode.  See N.T. Trial, 3/9/17, at 3.

Commonwealth v. Thomas, 879 A.2d 246, 260 (Pa.Super. 2005) (quoting Commonwealth v. Lark, 543 A.2d 491, 497 (Pa. 1988)). Pursuant to this test, we must first determine whether evidence of each of the offenses would be admissible in a separate trial for the others. Commonwealth v. Collins, 703 A.2d 418, 422 (Pa. 1997). "Evidence of crimes other than the one in question is not admissible solely to show the defendant's bad character or propensity to commit crime." Id.; see also Pa.R.E. 404(b)(1) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."). Nevertheless:

> evidence of other crimes is admissible to demonstrate (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) the identity of the person charged with the commission of the crime on trial. Additionally, evidence of other crimes may be admitted where such evidence is part of the history of the case and forms part of the natural development of the facts.

Collins, supra at 422-23; see also Pa.R.E. 404(b)(2); Commonwealth v. Melendez-Rodriguez, 856 A.2d 1278, 1283 (Pa.Super. 2004) (reiterating "other crimes" evidence is admissible to show motive, intent, absence of mistake or accident, common scheme or plan, and identity).

For purposes of demonstrating a common plan, scheme, or design, "[f]actors to be considered to establish similarity are the elapsed time between the crimes, the geographical proximity of the crime scenes, and the manner in which the crimes were committed." Commonwealth v. Taylor, 671 A.2d 235, 240 (Pa.Super. 1996) (upholding consolidation of three cases brought

against defendant for robbery because the similar criminal pattern employed and the high correlation between the details of the crimes indicated that all of the robberies were the handiwork of the same person).

Instantly, there were numerous similarities among the five heroin transactions for which Appellant was charged. The sales all took place within a one-month period, and were arranged via text messages. Additionally, in each case, Appellant sold the same controlled substance (heroin) to the same individual (CI) at the same location (100 Brown Street). Thus, evidence of each of the heroin transactions was admissible in order to show common plan, scheme or design because the evidence demonstrated that all of the drug transactions were closely linked temporally and geographically, and showed the like manner in which Appellant consummated them. See Commonwealth v. Kinard, 95 A.3d 279, 285 (Pa.Super. 2014) (holding that recordings of prison phone calls discussing ongoing drug transactions were admissible to show common scheme or plan where the drug transactions were similar to the transactions for which he was charged, and occurred in a pattern over three months); Taylor, supra.

Further, while the transactions at docket 109-2017 occurred after the transactions at 415-2016 and 416-2016, they would nevertheless have been admissible at trial in 415-2016 and 416-2016 to show Appellant's intent to engage in drug trafficking. See Collins, supra at 423 ("Although evidence of a subsequent offense is usually less probative of intent than evidence of a

prior offense, evidence of a subsequent offense can still show the defendant's intent at the time of the prior offense."). Thus, evidence of each of the heroin transactions was admissible in order to show Appellant's intent to continue to sell heroin. See Pa.R.E. 404(b)(2); see also Collins, supra at 422-23.

The second issue this Court must determine is whether the jury could adequately separate the evidence of the crimes in order to avoid the danger of confusion. See Commonwealth v. Kunkle, 79 A.3d 1173, 1190 (Pa.Super. 2013). "Where a trial concerns distinct criminal offenses that are distinguishable in time, space and the characters involved, a jury is capable of separating the evidence." Collins, supra at 423.

The record makes clear the jury was able to separate the evidence for each case. Initially, different witnesses testified for 415-2016 and 416-2016 than testified for 109-2017. Trooper Boltz and Officer Murray testified regarding the April 4 and 6, 2016 transactions at 415-2016 and 416-2016. Those controlled purchases involved police knowledge and involvement in the transactions, searches of the CI before and after the transactions, the use of state police funds to facilitate the transactions, police transportation to and from the controlled purchase location, and debriefing by police after the transactions. In contrast, the three transactions at 109-2017 were consummated without any police knowledge, involvement, transportation, or funds. Further, to establish the three transactions at 109-2017, the

Commonwealth relied primarily on the testimony of the CI,[6] her boyfriend, and copies of Appellant's text messages. Thus, the risk that the jury would confuse the issues was minimal.

Moreover, when the trial court charged the jury, it instructed the jury to consider each transaction separately and that it could not use the other crimes evidence as proof of Appellant's bad character. See N.T. Trial, 3/10/17, at 118-20. Notably, the jury made separate findings for each charge under each docket number. See Verdict Sheet, 3/10/17. The jury found Appellant not guilty of all charges at 415-2016 and 416-2016, demonstrating that the jury considered each case and each charge separately and did not cumulate the evidence. See Commonwealth v. Dozzo, 991 A.2d 898, 903 (Pa.Super. 2010). Accordingly, the presentation of the evidence, the court's jury instructions, and the jury's verdict demonstrate that the jury was able to, and did, separate the evidence for each case when it rendered its verdict. See Pa.R.Crim.P. 582; Collins, supra.

Finally, we must determine whether Appellant was unduly prejudiced by the consolidation of offenses. Thomas, supra. In weighing the probative value of the evidence against its danger of unfair prejudice, "the court must balance the potential prejudicial impact of the evidence with such factors as

_____

[6] As the CI testified for the Commonwealth at trial, she was no longer a "confidential" informant. However, for the sake of consistency, we will continue to refer to her as the CI.

the degree of similarity established between the incidents of criminal conduct, the Commonwealth's need to present evidence under the common plan exception, and the ability of the trial court to caution the jury concerning the proper use of such evidence by them in their deliberations." Commonwealth v. Frank, 577 A.2d 609, 614 (Pa.Super. 1990). Under Pa.R.Crim.P. 583, the prejudice the defendant suffers due to the joinder must be greater than the prejudice he suffers when the Commonwealth's evidence links him to a crime. See Commonwealth v. Lauro, 819 A.2d 100, 107 (Pa.Super. 2003).

> [T]he "prejudice" of which Rule [583] speaks is not simply prejudice in the sense that appellant will be linked to the crimes for which he is being prosecuted, for that sort of prejudice is ostensibly the purpose of all Commonwealth evidence. The prejudice of which Rule [583] speaks is, rather, that which would occur if the evidence tended to convict [the] appellant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence.

Id. (citation omitted) (emphasis in original).

The danger of unfair prejudice was relatively low in this case given that the testimony associated with the controlled purchases at 415-2016 and 416-2016 was easily separable from the testimony associated with the transactions at 109-2017. Moreover, the trial court instructed the jury that they were not to "decide this case on the basis of which side presented the greater number of witnesses or the greater amount of evidence" but, rather, on the basis of "which witnesses to believe and which evidence to accept" and, further, that

the Commonwealth had the burden of proving every element of every crime beyond a reasonable doubt.  N.T. Trial, 3/10/17, at 105, 108.

Following our review, we conclude that the trial court did not abuse its discretion in joining the criminal informations for trial.  Given the temporal proximity of the separate drug transactions, and that they all involved the sale of heroin to the same person at the same location, the evidence of each crime would have been admissible in the trials for the other offenses so that the jury could fully understand Appellant's intent, as well as his common scheme, plan, or design.  Moreover, the trial court concluded that Appellant suffered no prejudice as a result of the joinder.  See Trial Court Opinion, 12/29/17, at 1-3.[7]  Accordingly, Appellant is not entitled to relief on this issue.[8]

_____

[7] The trial court observed that, because Appellant waived his preliminary hearings, filed no pretrial motions, and did not enter a guilty plea at 415-2016 and 416-2016, the trial court had no reason to believe that he would proceed differently at 109-2017.  It further reasoned that Appellant had notice of the new charges because he had received copies of the text and phone messages in discovery.  Finally, the trial court reasoned that, even if a preliminary hearing had been conducted, the charges would have been held over for trial because the witness authenticating the text messages and confirming the transactions at 109-2017 was the CI, who was already testifying at 415-2016 and 416-2016.  See Trial Court Opinion, 12/29/17, at 2-3.

[8] Notably, in its Pa.R.A.P. 1925(a) opinion, the trial court did not address the propriety of its joinder of all three dockets under Pa.R.Crim.P. 582.  Instead, it addressed the propriety of its initial ruling permitting the Commonwealth to amend the criminal information filed at 416-2016.  See Trial Court Opinion, 12/29/17, at 1-3.  However, "[w]e are not limited by the trial court's rationale and may affirm its decision on any basis." See Commonwealth v. Cramer, ___ A.3d ___, 2018 PA Super 248 n.5 (Pa.Super. 2018); see also Commonwealth v. Moore, 937 A.2d 1062, 1073 (Pa. 2007) (holding that it

In his second issue, Appellant contends that the trial court erred in denying his multiple requests for a mistrial. Our standard of review of a court's denial of a motion for mistrial is as follows:

> In criminal trials, the declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial. By nullifying the tainted process of the former trial and allowing a new trial to convene, declaration of a mistrial serves not only the defendant's interests but, equally important, the public's interest in fair trials designed to end in just judgments. Accordingly, the trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, … assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion.

Commonwealth v. Thompson, 106 A.3d 742, 752-53 (Pa.Super. 2014) (quoting Commonwealth v. Hogentogler, 53 A.3d 866, 877-78 (Pa.Super. 2012)).

Appellant asserts that the trial court abused its discretion by not granting his requests for mistrial following several references to his incarceration, problems with the law, and probation. Specifically, Appellant argues that the following warranted the declaration of a mistrial:

> ⨡ Ms. Neves improperly referenced Appellant's incarceration when discussing the cell phone from which the subject text messages were retrieved, stating "we just kept [the phone]

_____

is a well-settled doctrine in this Commonwealth that a trial court can be affirmed on any valid basis appearing of record). As we conclude that the trial court did not abuse its discretion in permitting joinder, we affirm on this basis.

because we figured once he got out that we would just confront him and have proof." N.T. Trial, 3/9/17, at 79.

) The CI testified that she occasionally met Appellant at hotels to do drugs with him, and, when asked why Appellant sometimes stayed at hotels, the CI improperly stated, "he was wanted, and didn't want to stay in the same place all the time." Id. at 121.

) Additionally, when asked how he proceeded to find Appellant, Deputy Sheriff Samuel Bartley testified that he received information for Appellant's whereabouts "from the Jefferson County Adult Probation." N.T. Trial, 3/10/17, at 13.

) In his closing argument, the prosecutor referred to phone calls that had been admitted into evidence as "prison phone calls." Id. at 82. Thereafter, during its deliberations, the jury submitted a request to "re-read or hear the telephone conversation of [Appellant] in jail." Id. at 122.

Appellant's counsel objected to each of the references and repeatedly moved for mistrial. The trial court denied each request for a mistrial; however, it offered to provide a curative instruction on each occasion. Appellant's counsel declined each offer, not wanting to draw attention to the improper references. Appellant claims that he suffered prejudice as a result of the references.

"Not all references which may indicate prior criminal activity require reversal. Mere passing references to criminal activity will not require reversal unless the record indicates that prejudice resulted from the reference." Commonwealth v. Guilford, 861 A.2d 365, 370 (Pa.Super. 2004). We examine the "nature of the reference and whether the remark was

- 14 -

intentionally elicited by the Commonwealth" in deciding whether the court abused its discretion in failing to award a new trial. Id. (citation omitted). Additionally, if the trial court can "overcome any possible prejudice" with a cautionary instruction, a mistrial is unnecessary. Commonwealth v. Johnson, 846 A.2d 161, 166 (Pa.Super. 2004).

Upon review of the record, we conclude the trial court did not abuse its discretion when denying Appellant's mistrial requests. See Thompson, supra; Hogentogler, supra. It appears from the record that the above-cited testimony was not intentionally elicited nor exploited to any extent by the Commonwealth. Further, each of the references to prior criminal activity was brief. Indeed, even Appellant's attorney determined that it was best not to object to the references in order to avoid drawing attention to them. See N.T. Trial, 3/10/17, at 14, 82, 122-24; N.T. Trial, 3/9/17, at 80, 122. Accordingly, we conclude that the references were passing in nature. See Guilford, supra.

In order to cure these inadvertent disclosures, the trial court offered to administer a cautionary instruction, which Appellant's counsel repeatedly denied. See N.T. Trial, 3/10/17, at 14, 82, 122-24; N.T. Trial, 3/9/17, at 80, 122.[9] "When counsel chooses to refuse appropriate curative instructions for

_____

[9] We further observe that, following the jury's request during deliberations to hear the "jail" phone call, the trial court responded by providing the following curative instruction:

- 15 -

[a] legitimate tactical reason, the defense may not plead prejudice on appeal."
Commonwealth v. Miller, 481 A.2d 1221, 1223 (Pa.Super. 1984).
Accordingly, Appellant cannot now chastise the trial court for not providing
him with a cautionary instruction regarding these slips-of-tongue. See
Commonwealth v. Norman, 549 A.2d 981, 986 (Pa.Super. 1988) (en banc).

As the record reflects that Appellant rejected the trial court's offers to
provide the jury with a cautionary instruction, his second claim warrants no
relief.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/27/2018

_____

> [T]here's no evidence that [Appellant] was in jail. The
> conversations, as read, are not jail conversations, and as such,
> you should not consider it as a jail conversation. You should not
> consider anything about it, but to decide the case based on the
> evidence which was presented which was not – jail is not part of
> the evidence, is not part of the consideration.

Id. at 123-24. Thus, a mistrial was unnecessary as the trial court overcame
any possible prejudice with a cautionary instruction. See Johnson, supra.

- 16 -