J-S60035-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN CHRISTOPHER KIGER | : | |
| | : | |
| Appellant | : | No. 343 MDA 2019 |

Appeal from the Judgment of Sentence Entered January 23, 2019
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0005625-2016

BEFORE:  SHOGAN, J., STABILE, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:            **FILED DECEMBER 02, 2019**

John Christopher Kiger (Kiger) appeals from the judgment of sentence imposed by the Court of Common Pleas of Dauphin County (trial court) after a jury convicted him of robbery and conspiracy.  He argues on direct appeal that the trial court erred in (1) denying his motion *in limine* to admit victim character evidence and (2) precluding him from calling the victim's wife as an impeachment witness.  We affirm.

**I.**

In the summer of 2016, Kiger was married to Josephine Kiger but had moved out of their house and was in the process of divorcing her.  While the

_____

[*] Retired Senior Judge assigned to the Superior Court.

two were separated, Josephine Kiger met Jon Paul Young (Young) through an online dating website and let him move in with her.[1] Their relationship, however, deteriorated when Young did not financially contribute to the household and was asked to leave. When he did, Young still owed $400. In the following days, Young and Josephine Kiger exchanged a multitude of vituperative text messages in which Young, among other things, stated that he had no intention of paying the $400.

However, on September 9, 2016, Josephine Kiger texted Young that she wanted to work things out and invited him to her house. When he arrived, she let him in and took him into the kitchen. Unbeknownst to him, Kiger was waiting to confront him along with another woman, Talisha Brandao (Brandao). In the kitchen, Josephine Kiger and Young's conversation was cordial until she said she was going to "get back" at him. She then yelled "Now" and Kiger and Brandao emerged out of the basement with Kiger brandishing a wooden baseball bat. Brandao rummaged through Young's pockets, taking his car keys, wallet and iPhone; Kiger meanwhile stood in front of him with the baseball bat and yelled how dare he steal from his family.

Young had only $100 on him so the group decided to drive him to a nearby Sheetz to get more money out of an ATM. However, when they got to

---

[1] Kiger was aware that Young was living with his wife but had no interaction with him when he would go to the house to pick up his daughters.

the Sheetz, Young jumped out of the car and ran inside to tell the cashier to call the police. Kiger briefly chased him but quickly gave up and left with the others before the police arrived. A few days later, Kiger gave the police a statement admitting that he held a baseball bat during the incident. He denied, however, that he threatened Young and claimed instead that he armed himself with the baseball bat out of fear. Despite this claim, Kiger was charged with various offenses for his role in the incident.

Kiger eventually proceeded to an October 2018 jury trial that ended in him being convicted of robbery (threatens serious bodily injury) and conspiracy to commit robbery.[2] He was later sentenced to serve 24 to 48 months' imprisonment followed by 60 months' probation for robbery and a concurrent 18 to 36 months for conspiracy. As noted above, Kiger now challenges two of the trial court's evidentiary rulings.[3]

---

[2] 18 Pa.C.S. § 3701(a)(1)(ii), § 903(a).

[3] The trial court has discretion over the admissibility of evidence, and we will not disturb such rulings on appeal absent evidence the court abused its discretion. *See Commonwealth v. Ballard*, 622 Pa. 177, 80 A.3d 380, 392 (2013). An abuse of discretion is not a mere error in judgment. *See Commonwealth v. Ross*, 57 A.3d 85, 91 (Pa. Super. 2012) (*en banc*). Rather, "discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record." *Id.* (citations and internal quotation marks omitted).

**II.**

**A.**

Kiger first argues that the trial court erred in denying a pretrial motion *in limine* he filed to admit evidence about Young previously being subject to a protection from abuse (PFA) order. In the motion, Kiger averred that before the September 9, 2016 incident, he learned about the PFA through a public records search and that it would help explain to the jury why he had the baseball bat. After the trial court denied the motion, Kiger filed a motion for reconsideration. This time, Kiger attached the actual PFA order showing that it was entered in May 2010 in Ohio after Young sent threatening messages to his spouse. Kiger argued, among other reasons, that the PFA was admissible victim character evidence under Pa.R.E. 404(a)(2).[4] According to Kiger, the

_____

[4] Pennsylvania Rule of Evidence 404 provides in relevant part:

**Rule 404. Character Evidence; Crimes or Other Acts**

**(a) Character Evidence.**

*(1) Prohibited Uses.* Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.

*(2) Exceptions for a Defendant or Victim in a Criminal Case.* The following exceptions apply in a criminal case:

\* \* \*

PFA established the reasonableness of his belief that Young was dangerous and that he needed the baseball bat when he confronted him about the money owed to his wife. The trial court declined to reconsider its denial of the motion *in limine*.

Our Supreme Court has explained when victim character evidence may be admitted:

> [T]his Court has held that when self-defense is properly at issue, evidence of the victim's prior convictions involving aggression may be admitted, if probative, either (1) to corroborate the defendant's alleged knowledge of the victim's violent character, to prove that the defendant was in reasonable fear of danger, or (2) as character/propensity evidence, as indirect evidence that the victim was in fact the aggressor. ***Commonwealth v. Beck***, 485 Pa. 475, 402 A.2d 1371, 1373 (1979) (plurality) (citing and applying ***Commonwealth v. Amos***, 445 Pa. 297, 284 A.2d 748, 750–51 (1971)). Only those past crimes of the victim that are similar in nature and not too distant in time will be deemed probative, with the determination as to similar nature and remoteness resting within the sound discretion of the trial judge. ***Amos***, 284 A.2d at 752.

***Commonwealth v. Mouzon***, 53 A.3d 738, 741 (Pa. 2012).

_____

> (B) subject to limitations imposed by statute a defendant may offer evidence of an alleged victim's pertinent trait, and if the evidence is admitted the prosecutor may:
>
> (i) offer evidence to rebut it; and
>
> (ii) offer evidence of the defendant's same trait[.]

Pa.R.E. 404(a).

Kiger sought to admit Young's PFA to corroborate his belief about Young's violent character and prove that he possessed the baseball bat out of fear of Young, not to threaten him.[5] However, victim character evidence is relevant only when self-defense is properly at issue, which it was not in this case. A claim of self-defense requires:

> (a) that the defendant reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (b) that the defendant was free from fault in provoking the difficulty which culminated in the slaying; and (c) that the defendant did not violate any duty to retreat. Although the defendant has no burden to prove self-defense, ... before the defense is properly in issue, there must be some evidence, from whatever source, to justify such a finding.

*Id*. at 740 (citations, quotation marks, footnote and brackets omitted).

In his initial motion *in limine*, Kiger did not claim that he would be asserting a claim of self-defense at trial; instead, he averred only that Young's PFA "would be offered to explain why the defendant held a baseball bat during the incident." Motion In Limine, 2/9/18, at ¶ 10. Likewise, Kiger's motion for reconsideration contained no averments that he intended to claim at trial that

---

[5] Kiger's brief contains a stray assertion that the PFA was relevant to prove Young's "pertinent trait" under Pa.R.E. 404(a)(2)(B). Kiger's Brief at 27. However, Kiger did not raise this theory for admission in his motion *in limine* and, in fact, specifically averred in his motion for reconsideration that it was not being offered as character evidence of a pertinent trait of Young. See Motion for Reconsideration, 7/20/1, at ¶¶ 13-17. In any event, Kiger does not develop this stray assertion in his brief with citation of any relevant case law.

he acted in self-defense. In the absence of Kiger properly pleading that he intended to raise a self-defense claim at trial, the trial court properly found that Young's PFA would not be properly admissible as victim character evidence of aggression.

Moreover, for victim character evidence to be admissible under Pa.R.E. 404(a)(2)(B), it must be similar in nature and not too distant in time from the alleged offense. Young's PFA stemmed from threats he apparently made to his spouse over six years before the September 2016 incident that lead to this case. The trial court concluded that both the nature and timing of the putative evidence was too attenuated from Kiger's offense to be properly admissible under Pa.R.E. 404(a)(2)(B). This is certainly a reasonable conclusion and not one that we will disturb on appeal. Kiger's first issue thus fails.[6]

**B.**

Kiger next argues that the trial court erred in precluding him from calling Young's estranged wife, Jessica Young, as a witness for the purpose of impeaching Young with certain statements he made to her. At trial, defense counsel cross-examined Young about what he told his wife about the incident a few days after it happened. Defense counsel attempted to get Young to admit that told her via text message that he (1) was hospitalized due to

---

[6] Kiger also argues that the trial court's ruling violated his constitutional right to present a complete defense. Kiger's Brief at 28. Beyond this bald statement, however, he presents no supporting argument or legal analysis.

- 7 -

injuries he suffered during the incident and (2) he intended to sue the police department that initially responded to the Sheetz. Young, however, denied ever making any such statements to his wife. Defense counsel tried to impeach Young by showing him the text messages but Young denied that he ever sent the texts. When the Commonwealth objected for lack of authentication, the trial court sustained the objection and precluded the text messages from being admitted. N.T. Jury Trial, 10/25/18, at 87-90.[7]

After the Commonwealth rested, Kiger intended to call Jessica Young as its first witness. When asked for an offer of proof, defense counsel responded:

> Your Honor, I'm bringing her in strictly as an impeachment witness. She is able to impeach Mr. Young in two respects, one, he called her the night of the incident and gave her a very different account of what had happened than what he said here today.
>
> And two, whenever I asked him if he had any type of financial gain from this, he expressed that to her. I also believe that she can authenticate the text messages from earlier today that I confronted him with.

*Id*. at 119-20. The Commonwealth argued that Kiger was seeking to impeach Young on collateral matters with extrinsic evidence. The trial court agreed and precluded Jessica Young from testifying. Kiger now argues that her testimony was relevant impeachment evidence for showing Young's bias and partiality and provable through extrinsic evidence.

---

[7] Besides the text messages, Kiger also claimed that Young made the same statements in a phone call to Jessica Young several days after the incident. N.T. Jury Trial, 10/25/18, at 126.

Under Pennsylvania Rule of Evidence 607, "[t]he credibility of a witness may be impeached by any evidence relevant to that issue[.]" Pa.R.E. 607(b) (emphasis added). The Comment to Rule 607 notes that any evidence offered to impeach the credibility of a witness must meet the threshold for relevancy under Rule 401. Pa.R.E. 607 cmt. Pennsylvania courts have consistently recognized that evidence of bias or partiality is relevant to impeach the credibility of a witness. The United States Supreme Court has defined bias as "the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party." **United States v. Abel**, 469 U.S. 45, 52 (1984). In **Commonwealth v. Abu-Jamal**, 555 A.2d 846 (Pa. 1989), our Supreme Court adopted the reasoning of the United States Supreme Court in **Abel** that "[p]roof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness'[s] testimony." **Abu-Jamal**, 555 A.2d at 853 (emphasis omitted).

If the impeachment evidence is relevant as to bias, then it is not collateral and subject to proof by extrinsic evidence. However, if the evidence is not relevant to bias but instead merely truthfulness, then it is collateral and not provable through extrinsic evidence. **See** Pa.R.E. 608(b)(1) ("[T]he character of a witness for truthfulness may not be attacked or supported by cross-examination or extrinsic evidence concerning specific instances of the

witness' conduct[.]"); **see also Commonwealth v. Guilford**, 861 A.2d 365, 369 (Pa. Super. 2004) (noting a party may not impeach a witness on collateral matters or matters that have no relationship to the case at trial).

We agree with the trial court that Kiger was seeking to impeach Young's truthfulness through extrinsic evidence rather than show partiality or bias. As noted above, Jessica Young would testify that (1) Young told her he was injured during the robbery and (2) intended to sue the police. As for the injuries, Kiger does not explain how Young lying about injuries he did not sustain during the robbery shows his bias. As the trial court recognized, there was no factual dispute that Young was not injured or harmed during the robbery. As a result, his later statement to Jessica Young would be relevant only to show that he lied about a collateral matter which cannot be proven through extrinsic evidence.

As for his statement that he intended to sue the police, we likewise fail to discern its relevance to the robbery. Of course, evidence that a witness has financial gain or interest in the outcome of a connected civil suit would be relevant impeachment material. **See**, **e.g.**, **Commonwealth v. Butler**, 601 A.2d 268 (Pa. 1991) (error not to permit defendant to cross examine detective who had interest in civil suit that would be affected by outcome of criminal trial). In this case, however, there was no civil suit; Young never filed an action against the initial responding police department. That he was merely upset with the first officers that arrived would not be relevant to the robbery

- 10 -

and, like his statements about injuries he never suffered, be a collateral matter not provable through extrinsic evidence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/02/2019