J-A26025-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MASON CLARY | : | |
| | : | |
| Appellant | : | No. 2652 EDA 2019 |

Appeal from the Judgment of Sentence Entered May 2, 2019
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0003216-2018

BEFORE:   BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:                    Filed: January 21, 2021

Mason Clary appeals from the judgment of sentence, entered in the Court of Common Pleas of Montgomery County, after a jury convicted him of criminal conspiracy to commit aggravated assault—serious bodily injury.[1] Upon careful review, we affirm.

The trial court summarized the facts of this case as follows:

On April 6, 2018, the Norristown Police Department responded to a shooting in the area of Spruce and Willow Streets in Norristown, Montgomery County.  Officers obtained video footage from several locations around the area of the shooting.  Video surveillance from Pub Deli depicted [Clary] and co-[d]efendant [Jamal Wallace] together during the hours leading up to the shooting.  . . . [Clary] and Wallace were first seen there at approximately 5:03 p[.]m[.] From that time until approximately 8:04 p[.]m[.], video surveillance showed [Clary] and Wallace in and out of [] Pub Deli. The video shows them inside [] Pub Deli for periods of time, then

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 903; 18 Pa.C.S.A. § 2702(a)(1).

leaving and returning throughout the late afternoon/early evening. Each time [Clary] was at Pub Deli, he was with Wallace.

During the time they were at Pub Deli, at approximately 6:04 p[.]m[.], Wallace went to a vehicle parked just outside the store and retrieved a firearm from the glovebox. He racked the chamber of the gun and placed the loaded firearm in the waistband of his pants. Wallace then went back inside [] Pub Deli with the firearm in the right side of his waistband. His shirt was pulled up above his pants so that a portion of the firearm was visible. [Clary] remained inside [] Pub Deli while Wallace was outside retrieving the firearm. When Wallace came back inside [] Pub Deli, the firearm was visible in his waistband and [Clary] motioned to Wallace to put his shirt down to cover the firearm. Wallace pulled his shirt down over the waistband of his pants to cover the firearm, and the firearm created a visible bulge on his right side where it was located. There is no evidence that Wallace thereafter relinquished possession of the firearm.

[Clary] and Wallace left [] Pub Deli together for the last time at approximately 8:04 p[.]m[.] At that time[,] they went to the home of a minor, C.S., . . . and arrived there at 8:13 p[.]m[.] [C.S.]'s home backed up to [Clary]'s home. The three individuals then left C.S.'s house together at 8:16 p[.]m[.], and walked to the intersection of Spruce and Willow Streets in Norristown, which is located approximately three blocks from C.S.'s home. At this intersection, a pedestrian, later identified as the victim, Kamal Dutton, [] walked past the trio. [Dutton] was walking down the street, minding his own business[,] at the time he passed the trio of [Clary], Wallace, and C.S.

For no apparent reason, after [Dutton] walked past the trio, the three individuals turned around and confronted him together. The trio surrounded [Dutton] in a circular manner, each standing a few feet away from [him] and each other. The trio then started to fight with [Dutton], three on one. Wallace pulled out a firearm and pointed it at [Dutton] in full view of his fellow conspirators. As [Dutton] started to run away from the trio, they chased him, together, running east on Spruce Street toward DeKalb Street. As the trio chased [Dutton], Wallace fired multiple shots at him, ultimately striking him in the head. The trio of conspirators turned and quickly ran away together. The shooting occurred at approximately 8:21 p[.]m[.] After the shooting, the three individuals fled the scene together, leaving the victim bleeding on the ground.

Officer Kevin Fritchman, of the Norristown Police Department, found [Dutton] with a gunshot wound to the head . . . approximately three blocks from the scene of the shooting on Spruce Street. Police located a number of blood droplets [and four 9 mm shell casings] on Spruce Street at the scene of the shooting.

At the time of the shooting, C.S. was a seventeen (17) year[-]old juvenile. Based upon the offense, Norristown police filed charges against him for his role in the conspiracy and assault. Eventually, C.S.'s case was decertified to Juvenile Court and he entered an admission to conspiracy to commit aggravated assault. [C.S.] identified [Clary] and Wallace as the two men he conspired with to assault the victim. He admitted that the trio acted in concert to assault the victim.

[In addition, a]t the time of the shooting, [Clary] wore a GPS monitoring device on his ankle. Based upon data recovered from the GPS device, [Clary] was identified as being present at [] Pub Deli with Wallace before the assault and leaving [] Pub Deli approximately twenty minutes before the attack and shooting. The GPS data also identified [Clary] near the home of C.S. immediately before the crime, at the location of the crime, and then tracked back to the area near his and C.S.'s homes after the crime. On April 7, 2019, approximately twenty-four (24) hours after the shooting, [Clary] cut off his GPS monitoring device. The GPS data was corroborated by video surveillance. On April 16, 2018, C.S. identified [Clary] in a photographic lineup as an individual involved in the shooting, stating that he was not the shooter.

Trial Court Opinion, 10/21/19, at 3-7.

On May 3, 2018, the Norristown Police Department filed a criminal complaint charging Clary with conspiracy to commit aggravated assault and related charges. On October 29, 2018, the trial court ordered that Clary's case be consolidated with co-defendant Wallace's case. On March 7, 2019, Clary was convicted by a jury of one count of conspiracy to commit aggravated assault. Prior to sentencing, the Commonwealth notified Clary that it was

pursuing a mandatory minimum sentence under Pennsylvania's "second strike" rule. *See* 42 Pa.C.S.A. § 9714 (relating to second and subsequent crimes of violence). On May 2, 2019, the court sentenced Clary to a mandatory term of ten to twenty years' imprisonment. Clary timely filed a post-sentence motion, which the court denied on August 12, 2019.

On September 10, 2019, Clary timely filed a notice of appeal with this Court, followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. He raises the following issues for our review:

1. Did the trial court err in imposing a mandatory minimum sentence of ten years['] incarceration where the statute authorizing that sentence requires only proof by [a] preponderance of the evidence at the time of sentencing?

2. Did the trial court err in admitting improper prior bad acts evidence relating to GPS data obtained from an ankle monitor affixed to [Clary] due to his parole status?

3. Did the trial court err in failing to grant [Clary]'s motion for a mistrial where a witness referred to [him] as an "offender," as such evidence explicitly referred to [Clary]'s role in other criminal matters?

4. Was there sufficient evidence to convict [Clary] of criminal conspiracy where the Commonwealth presented no evidence regarding an agreement, in words or fact, between [Clary] and any other individual and the evidence established that the shooter acted on his own without prior knowledge or agreement of [Clary]?

Brief of Appellant, at 6-7.[2]

_____

[2] In his Statement of the Questions Involved, Clary also purports to raise the following issues: (1) the trial court erred in admitting improper hearsay evidence related to data derived from his GPS ankle monitor; (2) the trial court erred in failing to suppress fruits of an allegedly invalid search warrant;

Clary first claims that the trial court violated his due process rights by sentencing him to a mandatory minimum sentence of ten to twenty years' imprisonment. He maintains that the mandatory minimum statute, section 9714, is facially unconstitutional in that it requires proof of a prior criminal conviction by a preponderance of the evidence as opposed to reasonable doubt. Brief of Appellant, at 11. No relief is due.

Clary's constitutional challenge to the mandatory minimum sentence statute implicates the legality of his sentence. Thus, our standard of review is *de novo* and the scope of our review is plenary. ***Commonwealth v. Hopkins***, 117 A.3d 247, 255 (Pa. 2015).

> We begin our analysis by recognizing that there is a strong presumption in the law that legislative enactments do not violate the constitution. Moreover, there is a heavy burden of persuasion upon one who challenges the constitutionality of a statute. As a matter of statutory construction, we presume the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth. A statute will not be declared unconstitutional unless it clearly, palpably, and plainly violates the Constitution; all doubts are to be resolved in favor of finding constitutionality.

---

and (3) his conviction was against the weight of the evidence. ***See*** Brief of Appellant, at 6-7. However, Clary expressly withdraws each of those arguments in his appellate brief. ***See id.*** at 19 (withdrawing hearsay argument "as the data does not constitute hearsay"); ***id.*** at 20 (withdrawing suppression argument where there was no "violat[ion of Clary's] right to be free from unreasonable searches"); and ***id.*** at 30 (withdrawing weight challenge "[u]pon considered review" because arguments "strictly mirror the arguments as to" sufficiency). Accordingly, we need not address these issues. ***See Commonwealth v. Heggins***, 809 A.2d 908, 916 n.2 (Pa. Super. 2002) ("[A]n issue identified on appeal but not developed in the appellant's brief is abandoned and, therefore, waived.").

*Commonwealth v. Forbes*, 867 A.2d 1268, 1276 (Pa. Super. 2005) (internal quotations omitted).

> Section 9714 provides that:
>
> Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had been previously convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement.

42 Pa.C.S.A. § 9714(a)(1). *See also* 42 Pa.C.S.A. § 9714(g) (enumerating "crimes of violence"). Subsection (d) of section 9714 directs the trial court to "determine, by a preponderance of the evidence, the previous convictions of the offender and . . . shall impose sentence in accordance with this section." 42 Pa.C.S.A. § 9714(a)(d).

Clary does not dispute that he had a qualifying prior conviction at the time of sentencing, nor does he contend that section 9714 was applied incorrectly. Rather, he submits that the statute is unconstitutional because "due process requires proof [of the prior conviction] beyond a reasonable doubt." Brief of Appellant, at 15. Clary is mistaken; where prior convictions are concerned, due process is satisfied by the preponderance of the evidence standard. *See Apprendi v. New Jersey*, 530 U.S. 466, 496 (2000) ("[T]here is a vast difference between accepting the validity of a prior judgment of conviction[,] entered in a proceeding in which a defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt, and allowing the judge to find the required fact under a lesser standard of proof.").

In ***Alleyne v. U.S.***, 570 U.S. 99 (2013), the Supreme Court of the United States held that the Sixth Amendment requires that any fact—**other than a prior conviction**—that increases a mandatory minimum sentence for an offense must be submitted to the jury and proven beyond a reasonable doubt. ***Id.*** (emphasis added); ***see also Apprendi***, ***supra*** (holding Due Process Clause of Fifth Amendment and notice and jury-trial guarantees of Sixth Amendment, as applied to states through Fourteenth Amendment, requires any fact, **other than a prior conviction**, that increases maximum penalty to be submitted to jury and proven beyond a reasonable doubt) (emphasis added).

Clary suggests, despite express language to the contrary in ***Alleyne***, that "the implicit holding . . . is that due process requires proof beyond a reasonable doubt of **all** provisions triggering mandatory minimum sentences," including prior convictions. Brief of Appellant, at 14-15 (emphasis added). He insists that, "[w]hile the Sixth Amendment may require the fact-finder to decide on the mandatory-triggering element[,] . . . it is due process that requires the proof [of a prior conviction] beyond a reasonable doubt." ***Id.***

In ***Commonwealth v. Aponte***, 855 A.2d 800 (Pa. 2004), our Supreme Court, citing ***Apprendi***, rejected the appellant's argument that "35 P.S. § 780-115(a), which doubles the statutory maximum penalty upon proof of a prior conviction for a similar offense, without requiring proof beyond a reasonable doubt before a jury, violates due process under the Pennsylvania and United States Constitutions." ***Id.*** at 802. There, the Court explained:

Appellant overlooks the fact [] that **the statute at issue in this case does not provide for any fact-finding**, nor does it make the increased maximum sentence contingent on any factual question that has not already been determined. **The fact of a prior conviction stands alone**; it does not require a presumption[—]**it either exists as a matter of public record or it does not**. *See* [*Commonwealth v.*] *Allen,* [494 A.2d 1067,] 1071 [(Pa. 1985)] ("The existence of a prior conviction is a simple historical fact which may be ascertained through official documents."). **The appellant's guilt of the prior offense has already been determined beyond a reasonable doubt, by a jury**, if he chose to exercise that right, **and is a "'straightforward issue capable of objective proof'** and where 'the risk of error was slight[.]'" [] *Commonwealth v. Butler*, 760 A.2d 384, 388 ([Pa.] 2000)[.]

\* \* \*

[Thus, w]here [] the judicial finding is the fact of a prior conviction, **submission to a jury is unnecessary**, **since the prior conviction is an objective fact that initially was cloaked in all the constitutional safeguards,** and is now a matter of public record.

*Id.* at 811-12 (emphasis added).

In *Forbes*, *supra*, this Court recognized that "[s]ection 9714(a)(1) does not alter the maximum penalty for the crime committed nor create a separate offense calling for a separate penalty; it operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it." *Id.* at 1278. Accordingly, we concluded, citing, among other cases, *Apprendi* and *Aponte*, that "the court's application of [s]ection 9714(a)(1) did not offend [a]ppellant's due process rights under the United States [nor] Pennsylvania Constitutions." *Id.* at 1279. *See also Commonwealth v. Griffin*, 804 A.2d 1, 17 (Pa. Super. 2002) ("Contrary to [a]ppellant's assertions, . . . a jury [need not] decide whether a defendant is a recidivist.").

- 8 -

Although **Aponte** and **Forbes** were decided prior to the United States Supreme Court's decision in **Alleyne**, and the Pennsylvania cases which follow it, the above discussion is consistent with more recent decisions from this Court as well as the Pennsylvania Supreme Court.[3] **See**, **e.g.**, **Commonwealth v. Resto**, 179 A.3d 18, 21 (Pa. 2018) (explaining that "a conviction returned by a jury to which a mandatory minimum sentence directly attaches is not the same as an aggravating fact that increases a mandatory sentence. In any event, such a conviction is itself a contemporaneous jury determination, and the concern of **Alleyne** is with sentencing enhancements tied to facts to be determined by a judge at sentencing."); **see also Commonwealth v. Golson**, 189 A.3d 944, 1000-02 (Pa. Super. 2018) (upholding imposition of mandatory 25 to 50 year mandatory minimum pursuant to 42 Pa.C.S.A. § 9718.2, based upon prior conviction).

---

[3] In **Commonwealth v. Reid**, 117 A.3d 777 (Pa. Super. 2015), this Court noted that **Alleyne** did not overturn prior precedent holding that prior convictions are sentencing factors and not elements of offenses. **Id.** at 784; **see Almendarez–Torres v. U.S.,** 523 U.S. 224 (1998) (recognizing narrow exception for prior convictions to rule that any fact increasing punishment for defendant must be submitted to jury and proven beyond reasonable doubt). We specifically held in **Reid** that section 9714 is not rendered unconstitutional by **Alleyne**, as that section provides for mandatory minimum sentences based on prior convictions—specifically, crimes of violence. In **Commonwealth v. Bragg**, 133 A.3d 328 (Pa. Super. 2016), *aff'd per curiam*, 169 A.3d 1024 (Pa. 2017), we reiterated the same. **See id.** at 333 (challenge to mandatory minimum sentence for subsequent crimes of violence pursuant to section 9714 has no merit).

In light of the foregoing, we conclude that section 9714 does not violate Clary's due process rights. Because a defendant's prior conviction is an objective fact which exists as a matter of public record, and that determination was cloaked in all constitutionally-guaranteed safeguards at the time of the conviction, due process does not require the fact-finder to "find," for the second time, beyond a reasonable doubt, that a defendant previously committed a crime of violence in order to apply the recidivist sentencing statute, 42 Pa.C.S.A. § 9714. Where prior convictions are concerned, due process is satisfied by the preponderance of the evidence standard. **Alleyne**, **supra**; **Aponte**, **supra**; **Forbes**, **supra**.

Next, Clary claims that the court "erred in admitting [prior bad acts] evidence related to [his] wearing an ankle GPS monitor[,] because the probative value failed to outweigh the danger of unfair prejudice." Brief of Appellant, at 16. While Clary concedes that the GPS evidence is "probative of the identity of those present at the scene of the shooting," he submits that it was inadmissible because it "inherently bespeaks [his] involvement in the criminal justice system," indicating he is "either on probation or parole or awaiting new criminal charges." *Id.* at 17. Clary further argues that the court improperly admitted evidence of him removing the ankle monitor 24 hours after the shooting, because this evidence "constitute[s] further evidence of other crimes and fail[s] to fall within an exception to the rule prohibiting such evidence[,] Pa.R.E[.] 402(b)(2)." *Id.* He submits that the 24-hour gap

between the shooting and him removing the ankle monitor precludes application of the *res gestae* exception. ***See id.*** at 18. We disagree.

Our standard of review is well-settled:

In reviewing a trial court's ruling on the admissibility of evidence, our standard of review is one of deference. Questions concerning the admissibility of evidence are within the sound discretion of the trial court, and its discretion will not be reversed absent a clear abuse of discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill[-]will[,] or partiality, as shown by the evidence of record. Furthermore, if in reaching a conclusion the trial court [overrides] or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

***Commonwealth v. Thompson***, 106 A.3d 742, 754 (Pa. Super. 2014) (internal citations and quotation marks omitted).

Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. Pa.R.E. 404(b)(1). However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Pa.R.E. 404(b)(2). In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.

***Commonwealth v. Sherwood***, 982 A.2d 483, 497 (Pa. 2009). "In a criminal case[,] this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2).

Another [] circumstance where evidence of other crimes may be relevant and admissible is where such evidence was part of the chain or sequence of events which became part of the history of the case and formed part of the natural development of the facts.

- 11 -

> This special circumstance, sometimes referred to as the "*res gestae*" exception to the general proscription against evidence of other crimes, is also known as the "complete story" rationale, *i.e.*, evidence of other criminal acts is admissible to complete the story of the crime on trial by proving its immediate context of happenings near in time and place.

*Commonwealth v. Lark*, 543 A.2d 491, 497 (Pa. 1988) (internal citations and some internal quotation marks omitted). Finally, trial courts are not required to "sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts form part of the history and natural development of the events and offenses with which the defendant is charged."

*Commonwealth v. Peer*, 684 A.2d 1077, 1083 (Pa. Super. 1996).

On February 25, 2019, Clary filed a motion *in limine* to suppress, *inter alia*, the GPS data and an out-of-court identification of Clary that Dutton made to police, using a photo array, on May 2, 2018. On March 4, 2019, the court held a hearing on the motion, at which the Commonwealth conceded that the identification was invalid and agreed not to introduce the photo array at trial. *See* N.T. Pretrial Motions Hearing, 3/4/19, at 16. At the hearing, Clary raised the above-stated arguments regarding the GPS data. *See id.* at 67-71. The Commonwealth argued that the GPS data constitutes "crucial evidence" establishing the identity of the co-conspirators caught on video,[4] a common

---

[4] The Commonwealth noted at the hearing that "[t]here is video of the shooting that we are going to play for the jury where we can see that **out of the three actors, two of them[**—Wallace and Clary—]**are not readily identifiable by their faces** in that video. [C.S.] is the third person who is in that video, [and he] has already admitted his guilt[ and] was prosecuted in juvenile court. He's the only person whose face was identified. That's how

- 12 -

scheme, an opportunity to commit the crime, and the natural development of the case. *Id.* at 64, 95.

In conducting the necessary balancing test, the court found that: (1) the GPS data "is certainly relevant to show opportunity, identity, and the natural development of the case[, or '*res gestae*'];" (2) the act of removing the ankle monitor is relevant to show consciousness of guilt and *res gestae*; and (3) there was some potential for unfair prejudice against Clary by referencing his ankle monitor. *Id.* at 95. The court noted that in this matter, however, "identity is particularly significant because . . . we've concluded that the identification by the victim of [Clary] . . . is not admissible in court. The Commonwealth conceded that." *Id.* at 94. Ultimately, the court determined that the probative value of the GPS evidence, including the removal of the ankle monitor, "is significant[. I]t is critical evidence in this case, and [] it far outweighs any potential for unfair prejudice." *Id.* at 95-96.

The trial court guarded against unfair prejudice by giving cautionary instructions to the jury following the presentation of the GPS evidence and again during its closing charge. The court specified that the jury was not to consider the fact of Clary's GPS monitoring other than "for [the] very limited purpose" of "establish[ing] identity, opportunity, and . . . the progression of the facts in this case." *See* N.T. Jury Trial, 3/5/19, at 105-07, 178. The trial

_____

we started the investigation of the case." N.T. Pretrial Motions Hearing, 3/4/19, at 64 (emphasis added).

- 13 -

judge also expressly stated to the jury, "I want to be very clear that you must not and you may not consider this evidence suggesting that [] Clary is a person of bad character or his criminal tendencies [from] which you might infer guilt." *Id.* at 178.

Upon our review, we discern no abuse of discretion in the trial court's evidentiary rulings. Clary was on trial for conspiring with Wallace to shoot Dutton. The GPS evidence, which demonstrated that Clary had been with Wallace for hours prior to the shooting, pursued Dutton after Wallace pulled a gun on him, and fled with Wallace after the shooting, was not admitted to demonstrate his bad character or propensity to commit crimes. The evidence was properly admitted to prove, circumstantially, that a tacit agreement existed between the defendants—in other words, that Clary was not an innocent bystander at the wrong place at the wrong time when Wallace shot Dutton. **See** N.T. Pretrial Motions Hearing, 3/4/19, at 66 (Commonwealth sought to admit GPS evidence "as identify in proving scheme"[—otherwise fairly categorized as a lack of mistake or accident—]where evidence shows co-defendants traveling together before, during, and after shooting). The danger of unfair prejudice against Clary did not outweigh the probative value of the GPS evidence. **See Commonwealth v. Tedford**, 567 A.2d 610 (Pa. 1989) (affirming admissibility of evidence that defendant was enrolled in prison work release program and was granted furlough at time victim was raped and murdered, to establish opportunity and intent).

Similarly, evidence related to Clary's removal of the ankle monitor merely 24 hours after the shooting was properly admitted to tell the complete story of the case and establish Clary's consciousness of guilt. ***See Commonwealth v. Kinard***, 95 A.3d 279, 284-85 (Pa. Super. 2014) (affirming admissibility under Rule 404(b)(2), at trial for possession with intent to deliver, of appellant's phone calls from prison, **made over a pattern of three months after his arrest**, where appellant used terminology common amongst drug dealers, to establish knowledge, scheme, "**chain of events**[,] and a course of criminal conduct that would **demonstrate appellant's presence** in [the] home where the police located drugs **was not an innocent coincidence or accident**") (emphasis added); ***see also Commonwealth v. Flamer***, 53 A.3d 82, 88 (Pa. Super. 2012) (Commonwealth must be given the opportunity to show strength of defendant's consciousness of guilt through all admissible evidence); ***Commonwealth v. Pestinikas***, 617 A.2d 1339, 1347–48 (Pa. Super. 1992) (holding evidence of consciousness of guilt is relevant to form basis from which guilt can be inferred).

Next, Clary argues that the trial court abused its discretion in denying his motion for a mistrial where a Commonwealth witnesses indirectly referred to Clary as an "offender" in passing. He is entitled to no relief.

The award of a mistrial is an "extreme remedy" appropriate "only when an incident is of such a nature that its unavoidable effect is to deprive [the]

defendant of a fair trial." ***Commonwealth v. Manley***, 985 A.2d 256, 266 (Pa. Super. 2009). In exercising its discretion to declare a mistrial, the trial court "must discern whether misconduct or prejudicial error actually occurred, and if so, . . . assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion." ***Commonwealth v. Baldwin***, 158 A.2d 1287, 1293 (Pa. Super. 2017). A singular "passing reference" to prior criminal activity is usually not sufficient to show that the trial court abused its discretion in denying the defendant's motion for a mistrial. ***Commonwealth v. Sattazahn,*** 631 A.2d 597, 608 (Pa. Super. 1993). Additionally, the nature of the reference and whether the remark was intentionally elicited by the Commonwealth are considerations relevant to the determination of whether a mistrial is required. ***Commonwealth v. Guilford***, 861 A.2d 365, 370-71 (Pa. Super. 2004).

At trial, Commonwealth witness David Dethlefsen, who works for Attenti, the company that kept track of Clary's GPS coordinates, testified on cross-examination as follows:

Q: When a device is sent to a customer, you won't have any way to tell[—]things may get updated in the system, but you have no way to tell independently, unless it's updated in the system, who may or may not have worn that device; correct?

A: Right, yes.

Q: So it could have been worn by multiple people leading up to when [] Clary was given that device?

A: No. **Every time that the device is hooked on an offender**, there is a record of that.

N.T. Jury Trial, 3/5/19, at 159-60 (emphasis added).

Defense counsel subsequently requested a sidebar and made a motion for a mistrial which the court denied. Defense counsel advised the trial court that he did not want the court to caution the jury about the use of the word "offender" because he wanted to avoid drawing additional attention to the brief reference. *Id.* at 200.

Instantly, the extent of Clary's argument regarding his motion for a mistrial is as follows: "The trial court unreasonably exercised its discretion. . . . First, the use of the word offender impermissibly [al]luded to prior bad acts, without an adequate exception to the prohibition of other crimes' admission. . . . Second, the word offender implicated some sort of violation perpetrated by [Clary]. Accordingly, the trial court erred in failing to grant [Clary's] motion for a mistrial." Brief of Appellant, at 19-20.

We find Clary's arguments unpersuasive. First, the Commonwealth did not deliberately elicit the witness' remark; rather, it was elicited by defense counsel on cross-examination, and was not exploited by the Commonwealth. *See Guilford*, *supra*. Second, the witness' comment was brief and was made in passing. *See Sattazahn*, *supra*. The reference was apparently so insignificant that defense counsel declined a curative instruction so as to avoid drawing the jury's attention to it. Additionally, the witness' comment was a general statement about how the GPS device functioned; it did not specifically refer to Clary as an offender, and it offered no specific details about Clary's

prior criminal activity. *See id.* The trial court had also instructed the jury previously that it was not to consider the GPS evidence as tending to prove prior improper conduct or criminal propensity. Accordingly, the trial court properly exercised its discretion in denying Clary's motion for a mistrial. ***Manley***, ***supra***; ***see also Commonwealth v. Whiting***, 420 A.2d 662, 664 (Pa. Super. 1980) (in situation where cautionary instruction to jury would have cured any defect and defendant waived right to such instruction, court below correctly denied defendant's motion for mistrial on this basis), *rev'd on other grounds*, 462 A.2d 218 (Pa. 1983).

Lastly, Clary challenges the sufficiency of the evidence with regard to his conviction for criminal conspiracy. He claims that "the Commonwealth failed to present a shred of evidence evincing an agreement . . . to commit aggravated assault." Brief of Appellant, at 21. Clary also maintains that "no circumstantial evidence shows [Clary] possessed any knowledge that [] Wallace intended to shoot [] Dutton." ***Id.*** at 24. This claim has no merit.

Our well-settled standard of review when evaluating a challenge to the sufficiency of the evidence is as follows:

> [W]e assess the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict-winner. We must determine whether there is sufficient evidence to enable the fact[-]finder to have found every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak

and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Dunphy*, 20 A.3d 1215, 1219 (Pa. Super. 2011) (quoting

*Commonwealth v. Evans*, 901 A.2d 528, 532-33 (Pa. Super. 2006)).

To prove criminal conspiracy, the Commonwealth must prove the following: "(1) an intent to commit or aid in an unlawful act, (2) an agreement with a co-conspirator[,] and (3) an overt act in furtherance of the conspiracy." *Commonwealth v. Thomas*, 65 A.3d 939, 943 (Pa. Super. 2013). "Because it is difficult to prove an explicit or formal agreement to commit an unlawful act, such an [agreement] may be proved inferentially by circumstantial evidence, i.e., the relations, conduct[,] or circumstances of the parties or overt acts on the part of the co-conspirators." *Id.* It is proper for the Commonwealth to establish the conspiracy by proof of acts and circumstances subsequent to the crime. *Commonwealth v. Snyder*, 483 A.2d 933, 942 (Pa. Super. 1984).

In this case, the evidence established that Wallace and his co-conspirator Clary were together for several hours leading up to the shooting, as they were captured on Pub Deli's video surveillance leaving and returning numerous times. The surveillance footage showed that, prior to the unprovoked assault against Dutton, Wallace armed himself and Clary helped

him conceal the illegal firearm by alerting him to the fact that it was visible on his person. Wallace and Clary, together, then went to C.S's home, and the trio subsequently encountered Dutton near the intersection of Spruce and Willow Streets. The three men, acting in concert, surrounded Dutton, and when Wallace pointed his gun at Dutton's head, C.S. and Clary waited for Wallace to act. As Dutton attempted to flee, the three men, together, chased him. After Wallace fired four shots at Dutton's head, the trio turned and ran together for approximately one block before dispersing from each other and reconvening elsewhere on Willow Street. None of the co-conspirators tried to render aid to Dutton after Wallace shot him.

We agree with the trial court that the facts and circumstances demonstrate that Clary and Wallace were not acting independently and spontaneously. Rather, Clary's and Wallace's interactions and behavior in the hours prior to, during, and after the assault—especially with regard to obtaining and concealing the illegal firearm—prove, circumstantially, that the men shared a common understanding that a shooting would be committed, which, in fact, it was. *Cf. Commonwealth v. Kennedy*, 453 A.2d 927 (Pa. Super. 1982) (insufficient evidence to sustain conspiracy conviction where defendant expected friend to merely relay message to landlord, but, having noted friend's half-hour absence, went to locate him, found him engaged in confrontation with landlord, and impulsively joined in fight). Accordingly, the evidence, viewed in the light most favorable to the Commonwealth as verdict winner, and allowing for all reasonable inferences therefrom, was sufficient to

convict Clary of conspiracy to commit aggravated assault. ***Dunphy***, ***supra***;

***Thomas***, ***supra***; ***Kelson***, ***supra***.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/21/21