J-A30027-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| AARON TERRELL RILEY | : | |
| | : | |
| Appellant | : | No. 211 EDA 2025 |

Appeal from the Judgment of Sentence Entered December 5, 2024
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0004172-2023

BEFORE: LAZARUS, P.J., PANELLA, P.J.E., and SULLIVAN, J.

MEMORANDUM BY PANELLA, P.J.E.:          **FILED FEBRUARY 9, 2026**

Aaron Terrell Riley appeals from the judgment of sentence imposed on December 5, 2024, for his convictions of aggravated assault—attempt to cause serious bodily injury, aggravated assault—causing bodily injury with a deadly weapon, possessing instruments of crime, simple assault, and persons not to possess firearms.[1] Riley challenges the sufficiency and weight of the evidence, the legality of his sentence, and the discretionary aspects of his sentence. We find no merit to Riley's sufficiency and weight claims, but because the trial court did not have a complete record on which to impose the mandatory sentence for a second-strike offender, the legality of sentence

_____

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 2702(a)(4), 907(a), 2701(a)(1), and 6105(a)(1), respectively.

claim has merit, and we therefore are constrained to vacate his judgment of sentence and remand for a new sentencing hearing.

The trial court set forth the relevant factual and procedural history:

In the summer of 2023, Paul Jones lived with his fiancée at 315 East High Street, Apartment 1, Pottstown, Pennsylvania. The apartment was one of three (3) apartments located on the second floor at that address. All three (3) apartments were located above commercial space on the first floor. Sharneice Gambrell and her boyfriend, [Riley], lived in Apartment 3, which was directly across the hall from Mr. Jones's apartment. [Riley] always parked the car he drove, a gray Jeep Cherokee, in one of the parking spaces in front of the building.

On June 21, 2023, shortly before 2 a.m., Mr. Jones called the police because he observed a dispute between Ms. Gambrell and [Riley] in the common hallway. Mr. Jones made eye contact with Ms. Gambrell and [Riley]. Then, Mr. Jones observed Ms. Gambrell and [Riley] walk downstairs and outside. Looking out his apartment window, Mr. Jones saw Ms. Gambrell and [Riley] standing next to the Jeep Cherokee that [Riley] operated. The Jeep was located in one of the parking spaces in front of the building. Mr. Jones saw Pottstown Police officers respond to the scene and speak with Ms. Gambrell and [Riley] outside the building. Mr. Jones remained in his apartment during that time as he did not want Ms. Gambrell and [Riley] to know that he had called the police.

Officer Melinda Beary ("Ofc. Beary") of the Pottstown Police Department was one of the officers who responded to the call. Upon her arrival, Ms. Gambrell and [Riley] told her they were having a verbal altercation, and they did not need police assistance.

After Ms. Gambrell and [Riley] had finished speaking with police and returned to their apartment, Mr. Jones went outside and told the police that he was the individual who had called them. Mr. Jones and the police spoke on the sidewalk directly in front of the building. After Mr. Jones informed the police of what he had seen and heard regarding the dispute between Ms. Gambrell and [Riley], the police departed.

Mr. Jones did not see [Riley] later that night or the following day. Two (2) days later, on June 23, 2023, sometime between 10:30 p.m. and 10:45 p.m., Mr. Jones was walking to the entrance of 315 East High Street when he encountered [Riley] standing behind the Jeep Cherokee, which was parked in its usual position in front of the building. The trunk of the Jeep Cherokee was open, and [Riley] was holding a basket of clothes and laundry detergent. Mr. Jones asked [Riley] if he needed help going into the building. [Riley] stated he did not need help. [Riley] said he wanted to ask Mr. Jones a question. [Riley] then asked Mr. Jones if he had spoken to the police a couple nights prior, and Mr. Jones responded that he had spoken to the police. At that point, [Riley] became very upset, and he and Mr. Jones began to argue. As [Riley] and Mr. Jones spoke, [Riley] remained standing near the rear of the Jeep Cherokee while Mr. Jones stood on the sidewalk near the apartment building. Two (2) other men stood near [Riley]. One stood in front of the corner store entrance, and the other stood in front of the Jeep Cherokee's right front fender. Mr. Jones did not interact with either of those men before or during his conversation with [Riley]. Mr. Jones did not see either of those men in possession of a weapon.

Near the end of his conversation with Mr. Jones, [Riley] advised Mr. Jones that he should be afraid of [Riley]. Mr. Jones replied that he was not scared of [Riley]. Mr. Jones and [Riley] stood approximately two arms' length from each other. As Mr. Jones turned around to continue to walk towards his apartment building, he heard a loud bang and fell to the ground.

Immediately before Mr. Jones began to turn around "[Riley] was pulling up his shirt, and with the other hand he was pulling down his waistband, and I saw what I thought was a gun, and I saw him grab it, but I didn't see it any further after that."

Mr. Jones had been shot in the right leg. Less than a second had elapsed from the time Mr. Jones saw [Riley] reach into his waistband to the time he was shot. Mr. Jones described the pain as "like no other."

After falling to the ground, Mr. Jones saw [Riley] run to the Jeep Cherokee and drive away with the trunk still open. As [Riley] drove off, items fell from the Jeep onto the ground. Charles Nickle, a witness who heard the gunshot, saw a gray SUV speed away from the scene.

As he lay on the ground, Mr. Jones called 911. The police and emergency medical services arrived about one (1) minute after the call. After Mr. Jones told police what had transpired, an ambulance transported him to Reading Hospital, where he remained for three (3) nights.

The bullet entered behind Mr. Jones's right thigh and exited on the left side of his right knee. Mr. Jones's leg continued to bleed for about a month and a half, which required continued cleaning and bandaging. The shooting caused scarring to Mr. Jones's leg. Mr. Jones experienced pain in his right leg for 2-3 months after the shooting. He underwent physical therapy for about one (1) month after the shooting, and he had difficulty walking for about one (1) month to one and one-half months. Mr. Jones continues to feel pain in his right leg, particularly while working. Officer Jacob Martin of the Pottstown Police Department located a fired cartridge casing on the sidewalk against the building, just east of where Mr. Jones had fallen after being shot.

Ofc. Beary, one of the officers who had responded to Mr. Jones's call to police on June 21, 2023, also responded to the shooting of Mr. Jones on June 23, 2023. Mr. Jones told Ofc. Beary that his neighbor[,] i.e., [Riley,] shot him. Ofc. Beary asked Mr. Jones if he was shot by the same male from the previous incident[,] i.e., the June 21, 2023 altercation between [Riley] and Ms. Gambrell, and he replied affirmatively.

***

On September 9-11, 2024, Judge Thomas C. Branca presided over a three-day jury trial. At the conclusion of trial, the jury convicted [Riley] of counts 1-4. The court convicted [Riley] of count 5.

On October 9, 2024, the Commonwealth filed notice of intent to seek mandatory sentences due to conviction of second and subsequent violent offenses ("notice of intent to seek mandatory sentences").

On December 5, 2024, at the conclusion of a sentencing hearing, Judge Branca imposed the following sentence: count 1, 10 to 20 years' incarceration in state prison to date from June 24, 2023; count 3, no further penalty; and count 5, 5-10 years' incarceration in state prison to run consecutively to the sentence imposed on

- 4 -

count 1. [Counts 2 and 4 merged with count 1.] Accordingly, the court imposed an aggregate sentence of 15 to 30 years' incarceration.

On December 13, 2024, [Riley] filed a post-sentence motion in which he alleged that: (1) the verdict as to counts 1 through 5 was against the weight of the evidence; and (2) the aggregate sentence of 15 to 30 years' imprisonment is unduly harsh in that it exceeds the mandatory minimum sentence of 10 to 20 years as prescribed by the legislature in the enactment of the three-strike laws.

By order entered on December 17, 2024, Judge Branca denied [Riley's] post-sentence motion. On January 9, 2025, [Riley] timely appealed the judgment of sentence.

***

By order dated January 21, 2025, the court directed [Riley] to file a concise statement of matters complained of on appeal ("concise statement") pursuant to Pa.R.A.P. 1925(b). On February 7, 2025 [Riley] filed the following: (1) concise statement; and (2) motion for extension of time to file additional issues to be included in the concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b) ("motion for an extension"). By order dated February 11, 2025, the court granted [Riley's] motion for an extension and stated "Defendant's Additional Issues should be filed no later than the close of business on March 13, 2025." [Riley] did not file any additional issues.

Trial Court Opinion, 5/21/25, at 1-7 (footnotes, brackets, and unnecessary capitalization omitted).

The trial court authored its opinion pursuant to Pa.R.A.P. 1925(a) on May 21, 2025.

Riley raises the following three questions for our review:

[1]. Whether the trial court erred in failing to grant [Riley's] post-sentence motion for arrest of judgment and/or new trial in that the finding of guilty by the jury was against the weight of the evidence on charges of aggravated assault, 18 Pa.C.S.[A.] §§

2702(a)(1) and (a)(4), possession of firearm prohibited, 18 Pa.C.S.[A.] § 6105(a)(1), possession of instrument of crime, 18 Pa.C.S.[A.] § 907(a), and simple assault, 18 Pa.C.S.[A.] § 2701(a)(1) because the Commonwealth failed to establish that [Riley] possessed or discharged a firearm, and caused injury to the victim, as there was no physical evidence or eyewitness account observing [Riley] possessing a firearm[?] The victim did not observe [Riley] possess or utilize a firearm to shoot him.

[2]. Whether there was insufficient evidence as a matter of law to support the jury's finding of guilt on all charges because the evidence failed to establish that [Riley] possessed or discharged a firearm or caused injury to the victim as there was no physical evidence or eyewitness account of his possessing or shooting a firearm, and the victim did not see [Riley] possess or utilize a firearm?

[3]. Whether this Court should grant a remand for a resentencing hearing because the trial court abused its discretion in imposing an aggregate sentence of fifteen (15) to thirty (30) years of incarceration as the sentence imposed is contrary to the fundamental norms of the Sentencing Code in that it was unduly harsh, since the length of the sentence significantly exceeds the mandatory minimum sentence of ten (10) to twenty (20) years of incarceration, and further, the Commonwealth did not establish at sentencing that [Riley] was subject to the second strike law, 42 Pa.C.S.[A]. § 9714(a)?

Appellant's Brief, at 5 (reordered for ease of disposition; suggested answers and unnecessary capitalization omitted).

Riley first argues his convictions are against the weight of the evidence because the victim did not see who pulled the trigger and shot him. *See* Appellant's Brief, at 33. Riley argues the victim saw two other men near Riley when the shot rang out and it is therefore possible one of them shot Riley. *See id.* at 33-34.

We begin with our well-established standard of review:

This Court has recognized that a true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court.

Where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

***Commonwealth v. Dortch***, 343 A.3d 298, 306 (Pa. Super. 2025) (citations, brackets, and quotation marks omitted).

After detailing the law surrounding a weight of the evidence claim, the trial court aptly dismissed Riley's weight of the evidence claim:

In the instant case, the evidence presented by the Commonwealth established that: (1) On June 21, 2023, Mr. Jones called the police and reported a dispute between [Riley] and Ms. Gambrell; (2) on June 23, 2023, immediately before Mr. Jones was shot, [Riley] asked him if he had called the police a couple nights prior; (3) Mr. Jones replied that he had called the police; (4) [Riley] threatened Mr. Jones, telling Mr. Jones that he should be afraid of [Riley]; (5) during that encounter with [Riley], Mr. Jones and the other two (2) men at the scene did not interact; (6) immediately before turning around to continue to walk to the common entrance to the apartment building, Mr. Jones saw [Riley] pull up his shirt while using his other hand to pull down his waistband and grab what Mr. Jones thought was a gun; (7) Mr. Jones heard a loud bang and fell to the ground; (8) [Riley] fled from the scene in the Jeep Cherokee that he drove regularly; (9) police recovered a fired cartridge casing at the scene; (10) Mr. Jones suffered a gunshot to his right leg and spent three (3) nights in the hospital; (11) Mr. Jones continues to feel intermittent pain in his leg as a result of having been shot; and (12) [Riley] had a motive to shoot Mr. Jones in retaliation for Mr. Jones having called the police on June 21, 2023 and reported the dispute between [Riley] and Ms. Gambrell.

Based on this evidence, the jury could have reasonably believed that [Riley] possessed a firearm and shot Mr. Jones on June 23, 2023.

Trial Court Opinion, 5/21/25, at 10-11.

We cannot find an abuse of discretion in this analysis, and commend the trial court for its comprehensive consideration of this issue. Riley argued with the victim immediately before the victim was shot. *See* N.T. Trial, 9/10/24, at 31-32. While there were two other men present, the victim did not have any interaction with them and there was no motive for either of those men to shoot the victim. *See id.* at 38-39. The victim, seconds before being shot, observed what he believed to be a firearm and Riley reaching for that firearm. *See id.* at 33. The victim then fell to the ground due to the gunshot wound to his leg and saw Riley speeding away with his trunk open and items falling out. *See id.* at 34-35. The trial court did not err in denying Riley's weight of the evidence claim.

Next, Riley argues the evidence was insufficient to conviction him, again asserting there were two other men nearby who could have shot the victim. *See* Appellant's Brief, at 37. He further points out that police found him about twenty minutes later and he did not have a firearm on him, that a gunshot residue test was not completed, and that there were no surveillance videos showing the shooting. *See id.* He claims these facts support his belief that there was insufficient evidence identifying him as the shooter. *See id.* We disagree.

Our standard and scope of review is as follows:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is de novo and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the factfinder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the factfinder.

Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

\*\*\*

Finally, in addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes. It is well-settled that evidence of identity need not be positive and certain to sustain a conviction.

> Even if the Commonwealth presented only circumstantial evidence and offered no positive identification of the perpetrator, we may not weigh the evidence and substitute our judgment for the fact-finder as long as the evidence was sufficient to prove the accused's guilt.

***Commonwealth v. Torsunov***, 345 A.3d 339, 346-47 (Pa. Super. 2025) (citations, quotation marks, italics, and brackets omitted).

Since Riley only challenges his identification as the shooter and does not challenge any elements of the offenses of which he was convicted, we will not discuss the elements required for each offense. We note the trial court thoughtfully detailed every element required for the offenses and found sufficient evidence for each element. ***See*** Trial Court Opinion, 5/21/25, at 9-14.

Just as the verdict was not against the weight of the evidence, there was sufficient evidence to support it. Riley argued with the victim about calling the police mere moments before the shooting. ***See*** N.T. Trial, 9/10/24, at 31-32. Immediately prior to the shooting, Riley threatened the victim that he should be scared of him. ***See id.*** at 31. Finally, the victim saw Riley reaching for something that he believed to be a firearm only seconds before he was shot in the leg. ***See id.*** at 33. Riley then fled the scene with his trunk open. ***See id.*** at 34-35. This evidence is more than sufficient to support the jury's finding that Riley shot the victim.

Finally, Riley argues two distinct issues in his last claim. First, Riley asserts the Commonwealth did not present sufficient evidence that he had a prior conviction for a crime of violence so as to trigger the mandatory second-strike law. ***See*** Appellant's Brief, at 29. Second, Riley contends the trial court

abused its discretion in sentencing him, resulting in an unduly harsh and excessive sentence. **See id.** at 29-30.

Because we agree with Riley that the Commonwealth did not present sufficient evidence of what subsection of robbery Riley was previously convicted of at the sentencing hearing, we do not address Riley's claim that the trial court abused its discretion in sentencing him. We therefore begin with our standard of review regarding the applicability of the second-strike law.

A claim that the trial court lacked authority to impose a mandatory sentence implicates the legality of the sentence and is therefore non-waivable. **See Commonwealth v. Norris**, 819 A.2d 568, 571 (Pa. Super. 2003). "Accordingly, we must determine whether the trial court committed an error of law by imposing a sentence under the two strikes provision of section 9714(a)(1)[.]" **Id.** (citation omitted). The relevant portions of section 9714 provides as follows:

> (a) Mandatory sentence.—
>
> > (1) Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. …
>
> ***
>
> (a.1) Mandatory maximum.—An offender sentenced to a mandatory minimum sentence under this section shall be sentenced to a maximum sentence equal to twice the mandatory

- 11 -

minimum sentence, notwithstanding 18 Pa.C.S. § 1103 (relating to sentence of imprisonment for felony) or any other provision of this title or other statute to the contrary.

\*\*\*

(d) Proof at sentencing.—Provisions of this section shall not be an element of the crime and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. The sentencing court, prior to imposing sentence on an offender under subsection (a), shall have a complete record of the previous convictions of the offender, copies of which shall be furnished to the offender. If the offender or the attorney for the Commonwealth contests the accuracy of the record, the court shall schedule a hearing and direct the offender and the attorney for the Commonwealth to submit evidence regarding the previous convictions of the offender. The court shall then determine, by a preponderance of the evidence, the previous convictions of the offender and, if this section is applicable, shall impose sentence in accordance with this section. Should a previous conviction be vacated and an acquittal or final discharge entered subsequent to imposition of sentence under this section, the offender shall have the right to petition the sentencing court for reconsideration of sentence if this section would not have been applicable except for the conviction which was vacated.

(e) Authority of court in sentencing.— There shall be no authority in any court to impose on an offender to which this section is applicable any lesser sentence than provided for in subsections (a) and (a.1) or to place such offender on probation or to suspend sentence. Nothing in this section shall prevent the sentencing court from imposing a sentence greater than that provided in this section. Sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing shall not supersede the mandatory sentences provided in this section.

\*\*\*

(g) Definition.—As used in this section, the term "crime of violence" means … robbery as defined in 18 Pa.C.S. § 3701(a)(1)(i), (ii) or (iii) (relating to robbery) … .

- 12 -

42 Pa.C.S.A. § 9714.

The issue here is whether the trial court had a complete record of Riley's previous convictions. Riley notes the trial court, in its opinion, found a "discrepancy" in the subsection of which Riley had pled guilty in the previous case. Appellant's Brief, at 29. Riley argues it is unclear whether he pled guilty to subsection 3701(a)(1)(i), which would qualify as a crime of violence, or subsection 3701(a)(1)(iv), which would not qualify as a crime of violence. *See id.*

> The trial court noted:
>
> there is a discrepancy in the docket entries of [the prior conviction]. Specifically, the bill of information charged count 1 as robbery pursuant to 18 Pa.C.S.[A.] § 3701(a)(1)(iv) which would not constitute a "crime of violence" per 42 Pa.C.S.[A.] § 9714(g) whereas the transcript of the open guilty plea and the disposition sheet list the robbery as an F1[. P]er 18 Pa.C.S.[A.] § 3701(b), robbery under subsection 3701(a)(1)(iv) is an F2, not an F1.

Trial Court Opinion, 5/21/25, at 16.

The Commonwealth asserts the description on the bill of information, sentencing order, and court commitment order all list the offense as an F1 robbery and therefore this Court should ignore the "clerical" error of which subsection is listed. Commonwealth's Brief, at 23 n.2.

All these records pertain to the previous case and are not included in the certified record for our review. Nor were these records presented to the trial court as exhibits during sentencing. We are therefore unable to determine the accuracy of the Commonwealth's assertion.

- 13 -

Our review of the record confirms there was no evidence presented as to what subsection of robbery Riley pled guilty to on the previous case. The presentence investigation ("PSI") simply lists "Count 1: Robbery (F1)." Presentence Investigation and Report, 10/23/24, at 4. While the factual basis for the prior conviction would support a conviction under subsection 3701(a)(1)(i), it is the conviction, not the factual basis, that matters. **See id.**; **Commonwealth v. Guilford**, 861 A.2d 365, 375 (Pa. Super. 2004) ("Although the underlying facts of Guilford's guilty plea indicate that he attempted to commit a first degree felony burglary, we cannot ignore the plain language of section 9714(a)[], which requires a **conviction** of a crime of violence.") (emphasis in original).

There is no evidence within the record of what subsection Riley was previously convicted of and therefore there was not a complete record presented to the trial court to determine if Riley should be sentenced as a second-strike offender. We therefore vacate Riley's sentence and remand for a sentencing hearing where the Commonwealth may present a complete record of Riley's previous convictions so the trial court can determine if Riley is subject to the second-strike law.

Judgment of sentence vacated. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/9/2026